**Marvin BEMIS, Plaintiff,**

v.

**John HOGUE, as Plan Administrator and Trustee of the Franklin Electric Profit Sharing Plan and Franklin Electric, Inc., a Michigan corporation, Defendant.**

No. 83–CV–8122–FL.

United States District Court,
E.D. Michigan, S.D.,
at Flint.

April 22, 1986.

---

Marilyn A. Modorsky, Southfield, Mich., for plaintiff.

Steven F. Spender, Flint, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court are the parties' cross Motions for Summary Judgment pursuant to Rule 56, Fed.R.Civ.P., on the issue of liability. This case is an action against defendants Franklin Electric and John Hogue for benefits and penalties in relationship to the distribution of the Franklin Electric Profit Sharing Plan (hereinafter referred to as the Plan).

Plaintiff, Marvin Bemis, a participant in the Plan, was terminated from Franklin on March 26, 1982. On April 19, 1982, Bemis sent a request by certified mail for the "non-forfeitable vested portion" of his account. Hogue did not respond but claims

that he sent the letter to his attorney.[1] On October 29, 1982, Bemis's attorney sent Hogue's attorney a request for a copy of the Plan and Bemis's vested benefits.[2] On December 21, 1982, Bemis sent Hogue a certified letter requesting his benefits and other information including all plan instruments and a statement of his account benefits (Plaintiff's Ex. 6) This was returned unopened with instructions to go through legal channels. A second envelope was sent to Hogue but returned unopened with the same instructions. (Def. Brief at 4) Bemis claims that the information requested in this correspondence was finally completely received on January 15, 1984.

On March 23, 1983, Bemis filed this suit. Count I alleges that Hogue, Plan Administrator and Trustee, failed to follow Plan provisions by failing to notify plaintiff that his claim was denied and failing to provide him with the Plan's claim review procedure. Also, that Hogue's failure to respond entitled Bemis to damages. Count II claims that Hogue's failure to comply with plaintiff's request for Plan information makes Hogue personally liable for up to $100 a day. Bemis requests the following relief:

1. A lump sum distribution of his vested interest in the Plan.

2. A $100 a day penalty for failing to notify him of the decision to pay or not to pay his benefits and failing to provide him with the Plan's dispute claims procedure.

3. A $100 a day penalty for failure to provide him with requested information.

**1.** Hogue contends that the attorney told him not to do anything until Bemis's claim with the MESC was finished. In mid-1982 Hogue changed attorneys but claimed that he assumed that the attorneys were handling the matter.

**2.** A copy was sent to defendants' attorney who was then Robert White. White notified Hogue of the request. Defendants' claim that Hogue complied with the request and sent plaintiff the plan on December 23 or 29, 1982.

**3.** § 1140 provides in part:

## I IS PLAINTIFF ENTITLED TO A LUMP SUM DISTRIBUTION OF VESTED BENEFITS?

Section 7.04(d) of the Plan provides for distribution of benefits upon severance of employment "but commencement of ... distribution may, in the Committee's discretion, be defered until no later than the Participant's normal retirement date." Bemis claims that defendants have previously always distributed account balances to Plan members upon employment termination, that defendants' refusal to pay him his benefits is an unlawful act of discrimination under 29 U.S.C. § 1140[3] and a breach of Hogue's fiduciary duties. Bemis argues that no justification has been offered for defendants' failure to treat him like other employees, and that fact coupled with threats to withhold pension benefits, establish that defendants have violated § 1140 and their fiduciary duty thus giving rise to a remedy under § 1132(a)(3).

Hogue argues that he did not want to set a precedent which would encourage key employees to leave in order to obtain their benefits for that would have an adverse impact on Plan contributions. Defendants assert that while all other Plan participants were paid benefits upon leaving, these amounts were small in comparison to plaintiff's benefits and those that were paid were not key employees as was plaintiff. Hogue contends that *Morse v. Stanley*, 732 F.2d 1139 (2d Cir.1984) is relevant. *Morse* involved key employees who left Stanley for a competitor and requested an accelerated distribution of their vested profit sharing benefits. The Plan Trustee denied these requests.

It shall be unlawful for any person to ... discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, ...
The provisions of section 1132 of this title shall be application in the enforcement of this section.

Plaintiffs in *Morse* alleged that defendant acted arbitrarily and capriciously maintaining that defendant had systematically granted benefits to all leaving employees and that defendant should not be permitted to reverse the practice and single out plaintiffs for dissimilar treatment. The court rejected this argument stating that past practices did not put defendant in a discretionary straitjacket.

On the contrary, the Plan gave them broad discretion to evaluate requests for accelerated distribution on a case by case basis ... The expressed rationale is to encourage Bowne's employees to remain with Bowne, rather than accept competitive employment and obtain a cash windfall in the form of a lump-sum award from the Bowne Plan ... Considering that one of the purposes of a profit sharing plan is to provide financial resources to an employee at the time he retires and that the plaintiffs in this case will each receive their vested benefits with interest upon reaching their normal retirement age (65), their contention that the Trustees acted arbitrarily or in bad faith in denying them accelerated distributions is without merit.

*Id.* at 1144.

As to the *Morse* plaintiffs' claim that defendant breached its fiduciary duty, defendant contended that its intent was to insure the trust's profitability by denying plaintiffs' requests for early distribution. The court held that because defendant was under strict fiduciary standards of conduct, the court should intervene only when the Trustees transgress by acting in an arbitrary and capricious manner which had not been shown.

Here, defendants contend that benefits are not being denied, only deferred until the Plan's normal distribution date. However, there is a significant difference in this case from *Morse*. Defendants are alleged to have made threats against Bemis in the past to withhold benefits prior to terminating Bemis. (Hogue Dep. at 18–19, Ex. 1 of Bemis Dep. p. 37) Moreover, both Bemis and Hogue testified that whenever employees left Franklin Electric, they received their profit sharing benefits regardless of the percent in which they were vested. (Bemis Dep. at 43; Hogue Dep. at 21–29) Finally, it appears that Hogue never even attempted to comply with 29 C.F.R. § 2560.503–1(e) and § 7.08 [4] of the Plan and notify Bemis of his eligibility.

■ Defendants also claim that this issue is now moot because Bemis has been offered his benefits but has refused to accept them. (Aff. of Janet Hartzell). Although the issue of whether Bemis is entitled to a lump sum distribution appears to be moot, Bemis has alleged a violation of 29 U.S.C. § 1140 which gives rise to remedies under 29 U.S.C. § 1132(a)(3) which allows Plan participants to bring an action to obtain "appropriate equitable relief." *Bittner v. Sadoff & Rudoy Industries*, 490 F.Supp. 534, 536 (E.D.Wis.1980). ("Congress intended to provide 'the full range of legal and equitable remedies' available in both state and federal courts to those persons who have been injured by those practices made unlawful by ERISA"). Though it is proper to award benefits improperly denied, this is not the only relief available. *Blau v. Del Monte Corp.*, 748 F.2d 1348, (9th Cir.1985). Moreover, plaintiff and defendants dispute the amount of benefits to which plaintiff is entitled under the second [5] Plan. Thus, defendant's Motion for Summary Judgment on this issue must be

---

4. § 7.08 of the Plan states:

The Committee shall notify a Participant or his Beneficiary in writing within 60 days of his termination of employment ... of his eligibility or non-eligibility for benefits under the Plan, ... If the Committee determines that a Participant or Beneficiary is not eligible for benefits, the notice shall set forth the specific reasons for such denial....

5. Franklin Electric established an Employee Profit Sharing Plan (Plan 001) for non-union employees on October 15, 1969. Due to corporate ownership changes and name changes in the corporation, Plan 001 was terminated and a new plan was adopted in late 1976. At this time, all employees participating in Plan 001 became 100% vested in that Plan. The new Plan is the subject of this litigation.

denied. Plaintiff is entitled to benefits, the amount of which is disputed.

## II  DID HOGUE FAIL TO FOLLOW THE CLAIMS PROCEDURE?

Plaintiff requests damages for Hogue's failure to notify him of the decision not to honor his request for benefits. Section 7.08 of the Plan requires the Committee to notify a terminated participant of his eligibility for benefits within 60 days. Moreover, 29 U.S.C. § 1133 outlines the procedure to be followed when a participant's claim has been denied.[6] Section 1133 provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.

Plaintiff claims that Hogue's inaction violated these sections and a review of Hogue's deposition at pages 20–29 indicates that Hogue failed to follow the required procedure.

Defendants assert two defenses. First, that plaintiff's claims were not denied but that defendants only refused plaintiff's request for early distribution. Thus, the claims procedure is not applicable. Defendants cite *Pompano v. Michael Schiavone & Son, Inc.,* 680 F.2d 911 (2nd Cir. 1982), in which the court held that failure to make a lump sum distribution rather than the monthly payments actually made did not violate ERISA because defendants had absolute discretion to determine how benefits were paid. As to plaintiff's claim that defendants failed to give written notice of denial, the court in *Pompano* held that benefits were not denied, but it was only the mode of distribution which was denied so that written notice and fair review under 29 U.S.C. § 1133 was not required.

*Pompano* easily is distinguishable. In this case, plaintiff requested in writing the benefits to which he was entitled shortly after he was terminated. (See Plaintiff's Ex. 3) The Plan allowed for this and early distribution had been defendants' practice. 29 U.S.C. § 1133(1) clearly states that a participant "whose claim for benefits ... has been denied" must be given adequate notice of denial. Defendants' attempt to characterize the denial as a denial of the mode of distribution is spurious. Defendants denied plaintiff's claim for benefits and failed to provide plaintiff with the required notice. If the Court were to believe defendants, it would essentially be allowing Plan administrators to remain silent with impunity in the face of unequivocal claims for benefits.

Defendants' second defense relates to plaintiff's requested remedy under § 1132(c) which states:

> (c) Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... by mailing the material requested to the last known address within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the *amount of up to $100 a day* from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

(Emphasis added)

Defendants argue that plaintiff is only excused from having to exhaust his administrative remedies and is not entitled to the penalty.

Generally, claimants must exhaust administrative remedies before seeking federal court review unless exhaustion would be futile as claimant has been or will be

---

**6.** 29 C.F.R. § 2560.503–1(f) was enacted to implement this section. *See Clouatre v. Lockwood,* 593 F.Supp. 1136 (M.D.La.1984).

wrongfully denied meaningful access to the internal remedies. *Lucas v. Warner & Swasey Co.*, 475 F.Supp. 1071 (E.D.Pa. 1979). Defendants assert that their failure to comply with the notice and claims provision simply precludes exhaustion as a defense. They cite *Wesley v. Monsanto Co.*, 554 F.Supp. 93 (E.D.Mo.1982). Again, however, that case is easily distinguishable.

More applicable is *Cloutre v. Lockwood*, 593 F.Supp. 1136 (M.D.La.1984) in which the court decided the issue of whether the remedy for a violation of § 1133 is the penalty designated by § 1132(c). The court found that relief could be provided under § 1132(c), in the court's discretion, when the plan administrator failed to comply with requests for information, but that the plaintiff must plead and prove two elements: (1) That the administrator was required by ERISA to furnish such information to the participant, and (2) that the administrator failed or refused to comply with a request for such information.

As to the requirement that there be a request for information, the *Cloutre* court found that a request for benefits did not invoke the administrative duties.

> Since § 1133 sets forth an "automatic" duty to furnish ... information upon a denial of claimant's benefits, the failure to furnish [it] ... would be a violation of § 1133. However, absent a request for this information, the failure to provide such does not invoke the penalties of § 1132(c) ... It is only upon a denial of benefits that the administrator must furnish the information.

█ In this case, defendants have failed to furnish information required by 29 U.S.C. § 1133. However, it does not appear that plaintiff requested the information required by § 1133 until his December 21, 1982 letter in which he requested his benefits or reasons for denying them. Therefore, plaintiff is entitled to the penalties imposed by § 1132(c). Defendants have failed to give any compelling reason

why the Court should not exercise its discretion and grant such penalties.

## III DID BEMIS MAKE A REQUEST FOR PLAN DOCUMENTS, AND IF SO, DID HOGUE MAKE A REASONABLE EFFORT TO COMPLY?

█ Plaintiff claims that he made several requests for information pursuant to 29 U.S.C. § 1024(b)(4) to which defendants never complied. Section 1024(b)(4) provides that:

> (4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

Failure to comply makes a plan administrator personally liable under § 1132(c) for up to $100 a day from the date of the failure to comply. Plaintiff claims that on October 29, 1982,[7] his counsel requested a copy of the plan (Plaintiff's Ex.18), and there is some dispute as to when this was supplied. On December 21, 1982, a § 1024(b)(4) request for all information mandated by that section was made which does not appear to have been completely complied with until January or February 15, 1984.[8] (Plaintiff's Motion at 22–23). This correspondence was returned to plaintiff with instructions for plaintiff to go through legal channels. This scenario was apparently repeated on January 13–17, 1983. (Defendants' Brief at 25).

Defendants assert two defenses. First, they argue that the above instances were not requests to the plan administrator. This seems to refer to defendants' argument plaintiff's unopened letters cannot be construed to have conveyed a request. The Court agrees that "Hogue can't bury his

---

7. Plaintiff states that the October 29, 1982 letter was sent to Hogue's attorney.

8. A copy of this request was sent by certified mail to defendants' then legal counsel. (Def. Ex.4)

head ..." and ignore letters from plan participants, and the fact that there was animosity toward Hogue is irrelevant. Hogue had fiduciary duties as Plan Trustee which had to rise above personal differences. Moreover, the fact that letters were addressed to "Mr. John Hogue" and not to "Mr. John Hogue, Plan Administrator" is irrelevant especially since there is some evidence that he should have known what the letters involved.

Defendants' second defense is that plaintiff cannot show that he was prejudiced by defendants' failure to comply. Although defendants provide some case law to support this defense, the decision in *Porcellini v. Strasshein Printing Co. Inc.*, 578 F.Supp. 605 (E.D.Pa.1983) is more compelling. The *Porcellini* court notes that whether to impose the penalty is entirely in the court's discretion and the issue of prejudice as a prerequisite to a 1132(c) statutory penalty has never been directly addressed. The court held that although harm is a proper matter to consider in exercising discretion to award benefits, plaintiff does not have to show prejudice.

> The statutory award under section 1132(c) is clearly punitive in nature. It is not intended to compensate a plan participant for injuries suffered as a result of an administrator's wrongful refusal or failure to provide documents which a participant or beneficiary is entitled to under ERISA. The statutory penalty provision was ostensibly intended to induce or compel compliance with the full disclosure principles which are embodied in ERISA. The desire to compel disclosure and otherwise safeguard the establishment, operation and administration of employee benefit plans is fundamental to the statute.

*Id.* at 613–14

The court noted that because the penalties were intended to induce compliance for information requests, the court found the

primary focus should be on the conduct of the administrator. In that case, although the court did not find that defendants intentionally withheld information, it did find that defendants were completely indifferent to plaintiff's requests for information and that there was simply no excuse for a delay of almost three months. The court specifically rejected those cases which defendants in this case rely on for the proposition that plaintiff must show prejudice.[9]

The facts in this case are even more compelling than those in *Porcellini*. Plaintiff appears to have made several requests on the defendants for information. These requests were not completely complied with until early 1984. Whether plaintiff was prejudiced or defendants acted in good faith is irrelevant in this case. The facts indicate that defendants were completely indifferent to plaintiff's repeated requests for information. The only issue remaining is the amount of damages the Court shall decide in its discretion to assess.

### CONCLUSION

Therefore, for the reasons stated, defendants' Motion for Summary Judgment is DENIED. Whether plaintiff is entitled to a lump sum distribution of his accrued benefits is moot in that defendants have offered plaintiff his benefits.[10] Plaintiff is entitled to a penalty for defendants' failure to notify plaintiff of the decision to deny his request for benefits and failure to provide him with the dispute claims procedure; and an additional penalty for defendants' failure to provide plaintiff with documents so requested.

IT IS SO ORDERED.

---

**9.** This reasoning is also very persuasive in addressing the defendants' argument in this case that plaintiff must show bad faith on the part of the plan administrator.

**10.** The amount of these benefits are in dispute and are the subject of another motion for summary judgment.