**Alan KASCEWICZ, Plaintiff,**

v.

**CITIBANK, N.A., Defendant.**

**No. 92 Civ. 257 (LBS).**

United States District Court,
S.D. New York.

Nov. 23, 1993.

Vladeck, Waldman, Elias & Engelhard, P.C. (Debra L. Raskin, Owen M. Rumelt, of counsel), New York City, for plaintiff.

Proskauer Rose Goetz & Mendelsohn (Neil H. Abramson, of counsel), New York City, for defendant.

## OPINION

SAND, District Judge.

This is an action for benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (hereinafter "ERISA"). Defendant Citibank, N.A. ("Citibank") moves for summary judgment on the claims of plaintiff Alan Kascewicz ("Kascewicz") for benefits and statutory penalties. Kascewicz cross-moves for partial summary judgment on his claim for statutory penalties. For the reasons set forth below, we deny Citibank's summary judgment motion and grant Kascewicz's motion for partial summary judgment.

## I. *Undisputed Facts*

The essential facts in this case are undisputed. Kascewicz was hired by Citibank in 1958 as a clearance clerk and thereafter received promotions to positions of increasing responsibility. In 1975, he was promoted to the position of operations officer in Citibank's international banking group, formally known as the Institutional Banking International Services Management ("IBISM") division. In November 1988, Kascewicz requested and was permitted to take an unpaid two-year leave of absence, which he commenced on January 1, 1989. Kascewicz's decision to take the leave of absence was completely voluntary, and he understood when he applied for the leave that he was not guaranteed reemployment with Citibank if he chose to return at its conclusion. Def.'s 3(g) St. ¶¶ 1, 3; Pl.'s 3(g) Opp. ¶¶ 1, 3.[1]

After commencing his leave, Kascewicz provided no services to Citibank, received no salary in return, and was no longer considered an officer in "active" status. Def.'s 3(g) St. ¶¶ 4, 5.

In February 1989, one month after Kascewicz began his leave, Citibank reorganized the IBISM division, eliminating many senior officers' positions. In conjunction with the reorganization, Citibank implemented an early-retirement incentive Plan, the Voluntary Officers Separation Program (the "Plan"), which, according to Citibank, was intended to provide two years severance pay to senior officers with twenty years experience who were in active status and who were willing to retire by the offered date of April 14, 1989. Citibank does not dispute that the Plan was subject to the requirements of ERISA. Pl.'s 3(g) St. ¶ 1; Def.'s 3(g) Opp. ¶ 1.

Citibank implemented the Plan by distributing a one-page memorandum (the "Memorandum"), with a three-page Plan description attached (the "Plan Description"; together, the "Announcement"). *See* Abramson Aff. Exh. H. The Announcement is silent on the conditions of eligibility for the Plan and lacks

---

1. Citations are to defendant's Statement Pursuant to Local Rule 3(g) in Support of Defendant's Motion for Summary Judgment ("Def.'s 3(g) St."); Plaintiff's Submission in Opposition to Defendant's Statement Pursuant to Local Rule 3(g) ("Pl.'s 3(g) Opp."); plaintiff's Submission Pursuant to Local Rule 3(g) in Support of Plaintiff's Cross–Motion for Partial Summary Judgment ("Pl.'s 3(g) St."); Defendant's Response to Plaintiff's Submission Pursuant to Local Rule 3(g) ("Def.'s 3(g) Opp."); Affidavit of Neil H. Abramson ("Abramson Aff."); and Affidavit of Debra L. Raskin ("Raskin Aff."); Memorandum of Law in Support of Citibank's Motion for Summary Judgment ("Def.'s Mem."); Reply Memorandum in Support of Citibank's Motion for Summary Judgment and in Opposition to Plaintiff's Cross–Motion for Partial Summary Judgment ("Def.'s Reply Mem."); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross–Motion for Partial Summary Judgment ("Pl.'s Mem."); Plaintiff's Reply Memorandum of Law in Support of Cross–Motion for Partial Summary Judgment ("Pl.'s Reply Mem.").

any express indication of the persons to whom it is supposed to be addressed.[2] Citibank's personnel department distributed the Announcement to senior officers in the IBISM division with twenty years of service who were actively employed by Citibank. Citibank did not send Kascewicz a copy of the Announcement or otherwise contact him about the Plan. Def.'s 3(g) St. ¶11; Pl.'s 3(g) Opp.

In mid-February 1989, having heard about the Plan through friends, Kascewicz approached several individuals in Citibank's personnel department to inquire about his eligibility. Several employees in that office told him that he was not eligible for the Plan, which they said was limited to officers in active employment as of February 13, 1989. Kascewicz did not communicate with Citibank about the Plan again until August 1989. At that time, his attorney wrote to Citibank, twice requesting a copy of a summary Plan description ("SPD"), as required by the reporting and disclosure provisions of ERISA, 29 U.S.C. §§ 1021, 1022, 1024. Citibank had not prepared an SPD, and did not respond to the request. Def.'s 3(g) St. ¶¶ 11–14.

In January 1991, Kascewicz' leave of absence ended, and he sought to renew his employment with Citibank. In January 1992, having failed to secure renewed employment with Citibank, he commenced this action, seeking benefits in the amount of two years' salary (approximately $84,000) as well as penalties of $100 per day from September 27, 1989 to the date of Citibank's compliance with his request for Plan information.

## II. *Discussion*

### A. *Kascewicz's Claim That He Was Eligible For the Plan*

■ Citibank has moved, pursuant to Fed. R.Civ.P. 56, for summary judgment on Kascewicz's claim for Plan benefits. Summary judgment may be granted only where the moving papers and affidavits submitted by the parties "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court's role is not to resolve disputed factual issues, but rather to determine whether the record, taken as a whole, supports any issues that require a trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Summary judgment is a "drastic procedural weapon because 'its prophylactic function, when exercised, cuts off a party's right to present his case to the jury.'" *Garza v. Marine Transport Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988) (citation omitted). Thus, the moving party has the burden of showing the absence of a genuine issue as to any material fact, and the court must view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Garza,* 861 F.2d at 26. "[N]ot only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *Donahue v. Windsor Locks Bd. of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987).

Citibank contends that there is no genuine issue regarding the intended scope of the Plan. It argues that the Plan unambiguously applies only to active officers with 20 or more years of experience. First, it argues, the language of the Announcement is clear on its face; second, no other reading would be consistent with Citibank's purpose in enacting the Plan. Kascewicz responds that the intended scope of the Plan is unclear: first, that the terms of the Announcement are intelligible only if the Plan extends to inactive officers; second, that a Citibank officer admitted that the Plan was ambiguous in this regard; and, third, that Citibank's purpose in enacting the Plan cannot be unambiguously construed from the existing record.

■ In claims brought under 29 U.S.C. § 1132(a)(1)(B), where a plan does not grant

---

**2.** The Memorandum offered as Abramson Aff. Exh. H is captioned in standard memo format, but with the space for the addressee left blank, as follows:

MEMORANDUM TO:
 RE: Voluntary Officers Separation Program
 DATE: February 13, 1989

the plan administrator discretionary authority, the Court reviews the administrator's interpretation of the plan *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Bradwell v. GAF Corp.*, 954 F.2d 798, 800 (2d Cir.1992). Citibank accepts this as the appropriate standard of review in this case. Def.'s Mem. at 10.

We construe the Plan according to general principles of contract law, looking to the language of the Plan and other indicia of the intent of the Plan's creator. *Firestone*, 489 U.S. at 112–13, 109 S.Ct. at 955–56; *Bradwell*, 954 F.2d at 800; *Bellino v. Schlumberger Technologies, Inc.*, 944 F.2d 26, 31 (1st Cir.1991).

First, we must determine whether the Plan is ambiguous on its face. Whether the Plan is ambiguous is a matter that we determine by reference to the Plan's language alone. *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir.1990); *Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir.1990). The Plan is ambiguous only if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Care Travel Co. v. Pan American World Airways*, 944 F.2d 983, 988 (2d Cir. 1991). Only when the language of the Plan is ambiguous may the Court turn to extrinsic evidence of its creators' intent. *Curry Road*, 893 F.2d at 511.

### 1. The Plan Language

We start by noting that the Announcement, which was the only document prepared under the Plan, entirely fails to address the question of eligibility. Citibank does not mention this obvious deficiency but instead states that "[w]hen viewed objectively by a reasonably intelligent person who has examined the context of the entire [Plan], the Plan simply is not capable of more than one meaning; active employment as of February 13, 1989 was a requirement for participation." Def.'s Mem. at 12. For support, Citibank

cites various phrases scattered throughout the three-page Memorandum which, it argues, demonstrate Citibank's unambiguous intention to restrict the Plan to officers in active status.

For instance, the Memorandum notes that "we reserve the right, if you accept this offer, to set the effective date of leaving your position." Additionally, Citibank cites language from the Memorandum's offer of two severance options that, it argues, also indicates Citibank's intention to restrict the Plan to active-status officers. Recipients of the Memorandum can choose between "Choice I"—receiving an immediate lump sum payment of two years' salary, "paid at agreed upon effective date of leaving active employment or resignation"—or "Choice II"—"remain[ing] on payroll" for up to 24 months while receiving the two-year salary in installments. Abramson Aff. Exh. H. Citibank argues that this language unambiguously applies only to active employees: "Obviously, individuals like plaintiff who were not actively employed ... as of the date of the [Plan] offer could not 'leave active employment,' 'remain' in their jobs for 24 months, 'terminate from active employment,' or 'leave' their positions." Def.'s Mem. at 13.

Kascewicz disputes this reading. In particular, he seizes on one of these phrases for his argument that the language is ambiguous—the description of Choice I that says an immediate lump sum payment will be "paid at agreed upon effective date of leaving active employment or resignation." Kascewicz argues that the words "or resignation" would be redundant if the Plan were directed only to active officers, since leaving active employment and resigning would be identical acts. Pl.'s Mem. at 12. Accordingly, Kascewicz argues, the language of the Announcement is ambiguous, and summary judgment must be denied because the issue of Citibank's intent can be resolved only through an examination of extrinsic evidence.

We conclude, in light of the purpose and requirements of ERISA as well as the relevant principles of contract interpretation, that a close examination of such phrases is

unnecessary in order to find the Announcement's language ambiguous.

The purpose of ERISA, as the Supreme Court noted in *Firestone,* is to "ensur[e] that 'the individual participant knows exactly where he stands with respect to the plan.'" 489 U.S. at 118, 109 S.Ct. at 958 (citation omitted). As we have stated previously,

> [T]he general purpose of ERISA is to protect workers from abuses in the administration and investment of private employee and retirement plans.... [W]orkers could not protect themselves from abuses in the administration of their severance plan when they were unaware of its terms
> . . .

*Bennett v. Gill & Duffus Chemicals, Inc.,* 699 F.Supp. 454, 457–58 (S.D.N.Y.1988) (citation omitted).

To ensure that each participant "knows exactly where he stands with respect to the plan," ERISA requires the administrator of "each employee benefit plan" to distribute a plan description and a summary plan description ("SPD") "to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan." 29 U.S.C. §§ 1021, 1022, 1024. The SPD must be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1); *Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d 911, 914 (2d Cir.), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982).

Among the elements required by both the plan description and the SPD is a description of "the plan's requirements respecting eligibility for participation and benefits; [and] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). Citibank admits that its Plan was subject to ERISA and that it failed to draft any such documents. *See* Pl.'s 3(g) St. ¶¶ 1, 5; Def.'s 3(g) Opp. ¶¶ 1, 5.

■ It is appropriate to construe the language of the Announcement in light of these statutory requirements of clarity. Ad-

ditionally, we bear in mind the established rule of contract interpretation, drawn originally from the insurance context, that "[w]here an ambiguity exists in a standard-form contract supplied by one of the parties, the well-established *contra proferentem* principle requires that the ambiguity be construed against that party." *Westchester Resco Co. v. New England Reinsurance Corp.,* 818 F.2d 2, 3 (2d Cir.1987). The Second Circuit has adopted this rule as an aid in interpretation of ERISA insurance plans, *Masella v. Blue Cross & Blue Shield,* 936 F.2d 98, 107 (2d Cir.1991), and we find it appropriate in the context of employee benefit plans as well. An employee benefit plan is not a conventional contract; the parties (plan sponsor and participant) do not negotiate its terms. Such a document is thus analogous not to a fully negotiated contract but rather to a standard form contract. Here, where the Plan was drawn up by one party only and where ERISA imposes requirements on that party to provide certain information and they have failed to do so, it would be inappropriate to grant summary judgment to that party on the basis of plan language that is less than fully clear.

### 2. *Extrinsic Evidence*

Citibank responds that "[e]ven assuming an ambiguity exists, it is easily resolved in light of the evidence establishing Citibank's intention to exclude inactive officers" from the Plan. Def.'s Reply Mem. at 14. In support of this proposition, Citibank relies on deposition statements of its personnel officers for evidence of Citibank's intent in drafting the plan, Def.'s Reply Mem. at 3–4, and for evidence that this intent was communicated to Kascewicz, Def.'s Reply Mem. at 25.

■ Normally, "[w]here contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate." *Thompson v. Gjivoje,* 896 F.2d 716, 721 (2d Cir.1990). An exception exists where the moving party presents extrinsic evidence that is sufficient to remove the ambiguity and that is uncontradicted by opposing evidence; in such cases, as Citibank

notes, summary judgment is appropriate. *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 528 (2d Cir.1990); *Bacchus Associates v. Hartford Fire Ins. Co.*, 766 F.Supp. 104, 111 (S.D.N.Y.1991).

 Citibank contends that, in light of its deposition evidence, there is no question it intended to restrict its Plan to officers on active status. It contends, first, that the context of the Plan, specifically its implementation in conjunction with the reorganization of the IBISM division, makes this the only reasonable interpretation.

Citibank indisputably implemented its Plan as a means of inducing senior officers to take early retirement in conjunction with the division reorganization. What is at issue is whether this purpose was consistent with extending the Plan to an officer, such as Kascewicz, who was on inactive status.

Citibank contends that the Plan was an attempt to "purchase" the job guarantees of senior officers. Kascewicz knew when he left on extended leave that he was forfeiting his job guarantee, Citibank argues, so he had nothing which Citibank needed to "purchase." Citibank offers as evidence the deposition statements of its personnel officers as well as the bank's U.S. Human Resources Policy Manual (the "Manual"). The Manual provides that "[f]ull-time officers with 20 or more years of continuous service by 12/31/88 will be offered placement if their jobs are discontinued." Abramson Aff.Exh. C. Citibank contends that this policy constitutes a "guarantee" of employment for such officers, and that officers forfeit this guarantee if they take a leave of absence longer than four weeks. Def.'s 3(g) St. ¶ 2. Kascewicz does not dispute the existence of the policy or that the "right" is forfeited upon the taking of an extended leave of absence. He notes correctly, however, that the Manual does not legally "guarantee" continued employment, as the Manual represents only an expression of current policy, which Citibank reserved the right to change at any time.[3]

Kascewicz argues that Citibank's intent in offering the Plan was not solely to "purchase" job "guarantees," but the broader purpose of mitigating the impact of the division reorganization on employees in general, including Kascewicz. To support this interpretation, Kascewicz cites the deposition testimony of IBISM division executive Gerard P. Beitel, who described Citibank's purpose in offering the Plan as "trying to do the right thing for its employees" and as "a way to just lessen the impact on people ... who might be impacted by the job discontinuance." Beitel Tr. (Raskin Aff.Exh. C) at 37; Pl.'s Mem. at 16.

Kascewicz also offers evidence that at the time the Plan was offered, the Citibank personnel officers who had drawn up the Plan were uncertain of its scope. To this end, Kascewicz testified in his deposition that when he approached Beitel, the vice president in charge of Citibank's international banking division and one of the architects of the Plan, to inquire about his eligibility, Beitel did not answer categorically but instead asked for a month "to think about it" and "to see how many officers take advantage of the program." Raskin Aff.Exh. A at 83–84. As this issue is before the Court in the posture of a summary judgment motion, we must view this evidence in the light most favorable to Kascewicz, the non-moving party, and conclude that a genuine issue of material fact remains to be tried.

 Furthermore, the verbal representations on which Citibank relies do not, as Citibank urges, provide material evidence of Citibank's intent in formulating the Plan. Citibank argues that these representations constitute an unreviewable "plan design decision," as opposed to simply after-the-fact interpretations of the plan. Def.'s Reply Mem. at 25. We reject this characterization. As Citibank notes (Def.'s Reply Mem. at 21), the federal courts have recognized a distinction between a plan sponsor's *design* of an employee benefit program, which is "purely a corporate management decision," *Belade v.*

---

**3.** The Manual states on its front page that "The contents of this manual summarize current ... benefits ... and may be amended, varied, or eliminated by the corporation at any time without notice ... This guide should not be construed as a guarantee of continued employment." Abramson Aff.Exh. G.

*ITT Corp.*, 909 F.2d 736, 738 (2d Cir.1990) (per curiam), and the *administration* of such a program in accordance with its terms, which is reviewable *de novo*. As the Second Circuit noted in *Belade:*

> ERISA permits employers to wear "two hats," and ... they assume fiduciary status "only when and to the extent" that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA.

*Id.* (citation omitted).

Citibank argues in essence that its personnel officers were wearing their corporate-management hats, simply acting as plan designers, when they rejected Kascewicz' requests for inclusion in the Plan. However, as Kascewicz correctly points out (Pl.'s Reply Mem. at 8), Citibank's evidence does not provide a contemporaneous record of its intent in offering the Plan but merely after-the-fact determinations of Plan coverage. Such after-the-fact interpretations can provide no substitute for adequate plan descriptions at the time a plan is offered. Allowing such deposition testimony as evidence of intent would permit plan sponsors to develop after-the-fact rationales in order to justify the sponsors' *post hoc* interpretations of their plans.

 *Firestone* instructs that, rather than give weight to administrators' interpretations of plans, we instead review such interpretations *de novo*. 489 U.S. at 115, 109 S.Ct. at 956. The essence of a *de novo* review is that "the court is bound by the provisions of the documents establishing an employee benefit plan 'without deferring to either party's interpretation.'" *Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir.1989) (quoting *Firestone*, 489 U.S. at 112, 109 S.Ct. at 955). When we review the language of Citibank's Announcement *de novo*, without deferring to the *post hoc* verbal representations of Citibank personnel, we find that genuine issues of fact remain about the Plan's intended scope. Specifically, the factfinder must determine whether Citibank personnel officers intended *while they were drawing up the Plan*, not afterwards, that it should exclude officers on inactive status. *See Consarc Corp. v. Marine Midland Bank,*

996 F.2d 568, 576 (2d Cir.1993) (factfinders examining intent are to look to time of contracting, not to later evidence of intent). Since this is an issue of fact, we deny Citibank's motion for summary judgment.

**B.** *Statutory Penalties*

We turn now to the parties' cross-motions for summary judgment on the issue of statutory penalties. Both parties move for summary judgment on Kascewicz's claim that we should award discretionary penalties, pursuant to ERISA § 502(c), against Citibank for its failure to respond to his request for a summary plan description.

We face two questions: 1) Whether Citibank was obligated under ERISA to furnish Kascewicz with an SPD; and 2) if so, what penalty, if any, is appropriate.

**1.** *The Reporting Violation*

ERISA requires the administrator of every employee benefit plan, within 120 days after the plan becomes subject to ERISA, to distribute an SPD "to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan." 29 U.S.C. §§ 1022(a)(1), 1024(b). The statute provides for discretionary penalties of $100 per day, and "such other relief as [the Court] deems proper," if a plan administrator fails to comply within 30 days with a written request "for any information which such administrator is required by this subchapter to furnish to a participant or a beneficiary." 29 U.S.C. § 1132(c). Citibank admits that it never prepared an SPD for the Plan and that, when Kascewicz's attorney sent two letters to Citibank in August and September 1989 requesting an SPD, it failed to respond. Citibank argues, however, that it was not required to send Kascewicz an SPD because he was not a "participant or beneficiary" of the Plan.

 ERISA defines the term "participant" as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). In *Firestone*, the Supreme Court concluded that, for purposes of § 1132(c), "the term 'participant' is

naturally read to mean either 'employees in, or reasonably expected to be in, currently covered employment,' or former employees who 'have ... a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." 489 U.S. at 117, 109 S.Ct. at 957 (citations omitted). Kascewicz argues that he had a "colorable claim" and was therefore a Plan participant entitled to an SPD. We agree.

The Supreme Court noted in *Firestone* that its reading of the term "participant" was intended to give effect to "Congress' purpose in enacting the ERISA disclosure provisions—ensuring that 'the individual participant knows exactly where he stands with respect to the plan' ":

> Faced with the possibility of $100 a day in penalties under § 1132(c)(1)(B), a rational plan administrator or fiduciary would likely opt to provide a claimant with the information requested if there is any doubt as to whether the claimant is a "participant" ...

*Id.* at 118, 109 S.Ct. at 958.

In *Finz v. Schlesinger*, 957 F.2d 78 (2d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 72, 121 L.Ed.2d 38 (1992), the Second Circuit echoed this expansive view of a plan's obligation to disclose information: "[W]e believe that plan trustees have a general obligation to provide potential plan participants who request plan descriptions with adequate information about the plan." 957 F.2d at 82. The court added that "it is only logical that a ... plan's trustees owe at least some duty to a potential plan participant to facilitate the determination of whether he or she has rights under the plan." *Id.*

Clearly, as the Supreme Court noted in *Firestone*, recognition as a potential plan participant requires more than merely "claim[ing] to be one." 489 U.S. at 117, 109 S.Ct. at 957. On the other hand, the class of "potential participants," those who have "colorable claims" to benefits, clearly encompasses a larger group than just those individuals ultimately determined to have rights under a plan. A court may properly award statutory penalties under § 502(c) even if it determines that the plaintiff does not qualify for plan benefits. *See, e.g., Garred v. General Ameri-*

*can Life Ins. Co.*, 774 F.Supp. 1190, 1199–1201 (W.D.Ark.1991) (awarding more than $15,000 in penalties under § 502(c) while concluding that plaintiffs were not plan beneficiaries). We conclude, in light of the fact that Kascewicz was undisputedly an officer with 20 years of experience in the division, that Citibank was unable or unwilling to give Kascewicz a prompt, unequivocal response to his inquiry concerning his eligibility, *see* p. 1319 *supra*, and that no language in the Announcement or uncontradicted extrinsic evidence unambiguously excluded him from the Plan's coverage, that Kascewicz was a "potential participant" entitled to receive a Plan description containing sufficient information to allow him to determine whether he was eligible for the Plan.

### 2. *Penalties*

We consider next the question of what penalty, if any, is appropriate. Under ERISA § 502(c), the Court may, in its discretion, award "up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c).

Citibank argues that penalties would be inappropriate—that the case law requires that a court should not exercise its discretion to award penalties under § 502(c) unless the participant has been prejudiced by the administrator's refusal to provide an SPD, and that Kascewicz has not been prejudiced. Kascewicz responds that 1) prejudice is not a prerequisite for awarding damages under § 502(c); and 2) that, in any case, Citibank's refusal to provide him with an SPD did prejudice him in that, lacking any written information about the Plan, he was forced to retain counsel and initiate this lawsuit in order to determine his rights under the Plan.

While the Second Circuit has not ruled on the question of whether prejudice is a prerequisite for an award of penalties under § 502(c), district courts within the circuit have uniformly found awards of discretionary penalties to be inappropriate where the participant has failed to demonstrate that his rights have been prejudiced or that he has suffered "some degree of harm" from the

failure or delay. *Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 233 (S.D.N.Y.1989); *see also Plotkin v. Bearings Ltd.,* 777 F.Supp. 1105, 1108 (E.D.N.Y.1991); *Chambers v. European American Bank & Trust Co.,* 601 F.Supp. 630, 638–39 (E.D.N.Y.1985); *Donaldson v. Hamburg Savings Bank,* 568 F.Supp. 897, 900 (E.D.N.Y.1983); *Pollock v. Castrovinci,* 476 F.Supp. 606, 618 (S.D.N.Y. 1979), *aff'd without opinion,* 622 F.2d 575 (2d Cir.1980).

Other district courts, however, have awarded penalties under § 502(c) without a finding of prejudice to the plaintiff. *See Garred v. General American Life Ins. Co.,* 774 F.Supp. 1190, 1201 (W.D.Ark.1991); *Paris v. F. Korbel & Bros., Inc.,* 751 F.Supp. 834, 839–40 (N.D.Cal.1990); *Sandlin v. Iron Workers Dist. Council Pension Plan,* 716 F.Supp. 571, 574 (N.D.Ala.1988), *aff'd without opinion,* 884 F.2d 585 (11th Cir.1989); *Bova v. American Cyanamid Co.,* 662 F.Supp. 483, 490 (S.D.Ohio 1987); *Bemis v. Hogue,* 635 F.Supp. 1100, 1106 (E.D.Mich. 1986); *Porcellini v. Strassheim Printing Co.,* 578 F.Supp. 605, 613–14 (E.D.Pa.1983).

As the courts of appeal that have considered this issue have made clear, the requirement of prejudice is not derived from the language of ERISA; the statute simply commits the assessment of penalties to the trial judge's sound discretion. 29 U.S.C. § 1132(c); *Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 847 (11th Cir.1990); *Paris v. Profit Sharing Plan,* 637 F.2d 357, 362 (5th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *accord Chambers v. European American Bank & Trust Co.,* 601 F.Supp. 630, 638 (E.D.N.Y.1985) (decision whether to impose penalty, and how much, "is clearly committed to the discretion of the court"). "In exercising its discretion, therefore, the trial court may undoubtedly consider whether a denial of information prejudiced a plaintiff, but prejudice is not a prerequisite to an award of civil penalties." *Curry,* 891 F.2d at 847; *see also Sage v. Automation Inc. Pension Plan & Trust,* 845 F.2d 885, 894 n. 4 (10th Cir.1988) ("[w]hen plan representatives are completely indifferent to reasonable requests for plan and benefit information, a district court, in its discretion, may impose a penalty, even absent: 1) a showing of bad faith on the part of plan representatives, and 2) a showing of prejudice caused by the lack of prompt disclosure").

We conclude that prejudice is just one factor, albeit a significant one, out of the factors which district courts may consider in exercising their discretion whether to award penalties under § 502(c). Another factor that we find at least equally significant is the conduct of the plan administrator in responding to the participant's request for plan documents required by ERISA. *See Kleinhans v. Lisle Savings Profit Sharing Trust,* 810 F.2d 618, 622 (7th Cir.1987) ("the conduct and intent of the administrator in withholding information he or she was required to provide under ERISA would be a consideration relevant to a court's determination whether the case in question justifies the imposition of the statutory penalty"). The statutory penalty provision "is in the nature of punitive damages designed more to punish the intransigent administrator and to teach ERISA fiduciaries a needed lesson than to compensate the [plan participant] for actual loss." *Sandlin v. Iron Workers Dist. Council Pension Plan,* 716 F.Supp. 571, 574 (N.D.Ala.1988), *aff'd without opinion,* 884 F.2d 585 (11th Cir.1989); *Garred,* 774 F.Supp. at 1201. As another court has stated, in one of the most thorough examinations of this question:

Since the penalty provisions of Section 1132(c) are aimed at inducing administrators to comply promptly with requests for information about the plan, the primary focus of a court in assessing damages under that section should be the conduct of the administrator upon whom the liability is personally imposed. If a plan administrator in good faith is unable to comply with a request for information within the thirty (30) day period, the assessment of the statutory penalty would not further the statute's purpose. However, if an administrator intentionally withholds information, for whatever reason, where a proper request has been made, the assessment of the statutory penalty would be appropriate

even though the participant or beneficiary cannot show prejudice arising therefrom. *Porcellini v. Strassheim Printing Co.*, 578 F.Supp. 605, 614 (E.D.Pa.1983); *cited in Paris v. F. Korbel & Bros., Inc.*, 751 F.Supp. 834, 839–40 (N.D.Cal.1990); *Bemis v. Hogue*, 635 F.Supp. 1100, 1106 (E.D.Mich.1986).

■ The defendant in this case is one of the largest and most sophisticated banking institutions in the world. It certainly knows how to comply with ERISA's requirements, having created numerous summary plan descriptions for its other benefit plans. *See* Gugelot Dep. at 125, Raskin Aff., Ex. B. In this case, it not only failed to create such a document for the Plan, but it then displayed complete indifference to the reasonable request of Kascewicz's counsel for an SPD. We find utterly unconvincing Citibank's response, that "[b]ecause no SPD had been prepared for the [Plan], Citibank's failure to provide plaintiff with a copy *could not* have been the result of intentional conduct constituting bad faith. Simply, Citibank could not possibly have given plaintiff that which it never created." Def.'s Reply Mem. at 29. Were we to accept this argument, we would be allowing, and even encouraging, plan administrators to fail to prepare SPDs and other documents required by ERISA. Failure to prepare plan documents unambiguously required by ERISA cannot by any stretch of the imagination be considered a defense to reasonable requests for the documents.

■ We do not think that our award of penalties in this case is at odds with the other opinions from this circuit cited above. Kascewicz clearly suffered "some degree of harm," *Kelly*, 717 F.Supp. at 233, from Citibank's failure to prepare and distribute an SPD. Lacking any written information about the Plan, Kascewicz was forced to retain counsel and initiate this lawsuit in order to determine his rights under the Plan. *See Curry*, 891 F.2d at 847 n. 10 (need to retain counsel may constitute prejudice); *Garred*, 774 F.Supp. at 1201 (same). Someone who is compelled to retain counsel and incur expense to determine where he stands in relation to an ambiguous plan, has suffered an injury regardless of the ultimate conclusion of eligibility.

Comparable harm was not demonstrated, and generally not even alleged, in any of the five above-cited cases from this circuit. In *Plotkin*, for example, the plaintiff "wholly failed to allege that he was harmed or otherwise prejudiced by the delay." 777 F.Supp. at 1108. The same appears to have been true in *Donaldson*, 568 F.Supp. at 900, and in *Pollock*, where in addition the court found that the plaintiff "was not proceeding entirely in good faith," 476 F.Supp. at 618. In *Chambers*, the plaintiff argued, but was unable to demonstrate, that a 42–day delay in receiving plan documents "in any way adversely affected" his ability to appeal his denial of benefits. 601 F.Supp. at 639.

In only one of the five cited cases from this circuit did the plaintiff make a colorable argument that his rights had been prejudiced by an administrator's failure or delay in supplying requested documents. In *Kelly*, the plaintiff complained of a nine-month delay in receiving plan documents. He argued that the delay prejudiced him by complicating his job search, his evaluation of job offers, and his negotiations for employment with his future employer, as well as delaying his decision to file a lawsuit against the defendant. 717 F.Supp. at 233. The district court found these allegations "speculative" and granted summary judgment to defendant. *Id.* Here, in contrast, Citibank was not merely tardy in furnishing Kascewicz with plan documents but in fact never produced them. Thus, unlike Kelly, who eventually received the requested documents, Kascewicz had no means of determining his eligibility for the Plan other than retaining counsel and filing this lawsuit. Citibank's failure to prepare or distribute an SPD thus caused Kascewicz a degree of harm that was not demonstrated in any of the cases in this circuit in which penalties were denied.

■ Having concluded that statutory penalties are appropriate in this case, we must decide how large a penalty to award and when it should be paid. In the cases that we have reviewed in which district courts have assessed penalties under § 502(c), the size of the per diem penalties has ranged from less than $10 a day to $50 a

day, and the aggregate penalties have ranged from $1,500 to over $15,000. *See, e.g., Garred,* 774 F.Supp. at 1201 (assessing $50–per–day penalty, for total award of $15,775); *Paris,* 751 F.Supp. at 840 ($10 per day, total penalty unlisted); *Sandlin,* 716 F.Supp. at 574 (aggregate penalty of $15,000, representing approximately $37 per day); *Bova,* 662 F.Supp. at 491 (aggregate award of $10,000, for approximately 3–year period); *Porcellini,* 578 F.Supp. at 614 ($25 per day, for total of $1,500).

As the court aptly noted in *Porcellini,* "[a]n administrator should not be permitted to blithely ignore a proper request for documents until legal counsel has been obtained to secure enforcement of the right to that information." 578 F.Supp. at 616. Accordingly, we will in our discretion assess penalties in the amount of $25.00 per day against Citibank, running from September 27, 1989, the date from which Kascewicz claims penalties, to March 6, 1992, the date on which Citibank filed its answer in this action, for a total assessment of $22,275.00, to be paid upon entry of final judgment in this action.[4]

 Kascewicz additionally requests an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). Section 1132(g)(1) provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In light of the Court's assessment of penalties, we decline to award attorney's fees to Kascewicz, of course without prejudice to an application which Kascewicz may make at the conclusion of the proceedings, should he be a prevailing party.

## CONCLUSION

For the reasons set forth above, Citibank's motion for summary judgment is DENIED. Kascewicz's motion for partial summary judgment on the issue of statutory penalties

is GRANTED, and discretionary penalties in the amount of $22,275.00 awarded.

SO ORDERED.

---

4. Section 502(c) provides that the plan administrator be "personally liable" for any statutory penalties awarded. Since the Announcement does not specifically designate anyone as Plan administrator, we consider Citibank the administrator. *See* 29 U.S.C. § 1002(16) (if the "instrument under which the plan is operated" does not specifically designate an individual as plan administrator, the "plan sponsor," in this case Citibank, should be considered the administrator).