**Bronwyn J. SCARSO, Plaintiff,**

v.

**Harold J. BRIKS, Harold J. Briks D.C.P.C and Briks Chiropractic Center, Defendants.**

**No. 95 Civ. 0575 (BDP).**

United States District Court, S.D. New York.

Jan. 4, 1996.

Pamela D. Armstrong, Southampton, NY, for Plaintiff.

Eugene I. Farber, Farber Segall & Pappalardo, White Plains, NY, for Defendants.

### *AMENDED* FINDINGS OF FACT AND CONCLUSIONS OF LAW

PARKER, District Judge.

Plaintiff Bronwyn Scarso ("Scarso") brought this action against defendant Harold J. Briks and Harold J. Briks D.C.P.C. and

Briks Chiropractic Center under the Employee Retirement Income Security Act of 1974 ("ERISA"). Scarso seeks to recover benefits under a retirement plan. Additionally, she seeks penalties and attorneys fees. For reasons set out below, the Court finds that Scarso is entitled to recover the benefits due under the retirement plan as well as penalties and attorneys fees.

## FINDINGS OF FACT

Defendant Harold Briks ("Briks") is the principal of defendant Harold J. Briks and Harold J. Briks D.C.P.C. which is doing business as Briks Chiropractic Center. Scarso worked for Briks as a chiropractic assistant from September 1981 through May, 1993. In 1982, Briks established and started contributing toward a discretionary pension plan ("the Plan") in which Briks, his wife, and Scarso were all beneficiaries.[1] Briks stopped contributing to the Plan in 1986.

The Plan was initially funded through First Investors Life Insurance Company ("First Investors") with the purchase of multiple insurance policies and annuities, of which an unknown portion was to benefit Scarso. Between 1984 and 1986, all pension investments at First Investors were terminated. Upon termination, First Investors issued Briks a total of four checks[2]: one dated July 11, 1984 in the amount of $3,839.18; another dated August 24, 1984 in the amount of $14,144.17; another dated April 28, 1986 in the amount of $2,850.36; and another dated June 25, 1986 in the amount of $5,579.80, totalling $26,413.51. As for the August 24, 1984 check, there was testimony that Scarso's accrued pension benefits included $2,910.75. As for the April 28,

1986 check, there was testimony that $294.71 was allocable to Scarso. It was not established how much money from the July 11, 1984 and the June 25, 1986 checks was allocable to Scarso.

Additionally, the plan included a life insurance policy at Banker's Life Insurance Company of New York for Scarso's benefit. As of May 31, 1993, the Banker's Life Policy was valued at $1,500.79.[3]

Finally, the plan also included a money market fund at First Trust Corporation ("First Trust"). One statement dated April 1993—June 30, 1993 indicates that the pension benefits were valued at $443.69. The amount owed Scarso, however, was not established.

On May 23, 1993, Scarso's last day of work, Scarso asked Briks for her vacation pay and her pension.[4] According to Scarso's testimony, which we credit, Briks responded that he would send it, and that Scarso "knew [he was] good for it." When Scarso did not receive the funds, she called Briks's office and reminded Mrs. Briks to send the funds. Mrs. Briks responded, "no problem. We will send it." On August 1, 1994, Scarso's attorney sent a written demand to defendants for document stating the terms of the pension plan, the summary plan description all plan amendments, terminal reports and statements of plaintiff's accrued pension benefits. Briks did not respond. In January 1995, Scarso commenced this action seeking to enforce her rights under ERISA. On July 7th 1995, Briks provided Scarso with scant information regarding the plan. At trial, Briks testified that his accountant Anthony Rivero, disappeared in 1986 and took the pension

---

1. Briks told Scarso that she was included in the Plan, but he never provided her with papers setting forth the Plan's terms. Scarso testified that she remembered getting copies of approximately four or five First Investors certificates bearing her name and identifying her beneficiary in the event of her death. One certificate was in the amount of approximately $36,000; another was in the amount of approximately $31,000; and another was in the amount of approximately eighty-six dollars.

2. The existence of these checks was established through the testimony of Paul Kunz ("Kunz"), a staff attorney for First Investors. Neither original copies of the checks nor any hard photocopies exist, but Kunz reviewed them on microfilm the day that he testified.

3. While it is unclear if and when Briks terminated the Bankers Life policy, on January 30, 1995, Bankers Life issued Briks a check for $1,636.20 "in exchange for surrender value of the policy."

4. Scarso also testified that, starting in 1991, on the advice of her father, she asked either Briks or his wife "every day" about pension papers. Finally, in October, 1992, he told her that she had no pension.

documents with him.[5] Briks did not, however, report the theft to the police [6], the Internal Revenue Service or a financial institution.[7]

## CONCLUSIONS OF LAW

Scarso's complaint alleges various violations of ERISA. Jurisdiction is predicated on Section 502 of ERISA.

### Unpaid Benefits

■ Scarso's claim is brought under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which provides plan participants with an express private cause of action to recover benefits under an ERISA plan. ERISA does not provide an express standard of review for courts to apply in a benefits dispute under § 502(a)(1)(B). In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that the language of the plan determines the standard of review. If the plan grants no discretion to the administrator or fiduciary to construe its terms, a de novo standard applies. *Firestone*, 489 U.S. at 110–12, 109 S.Ct. at 954–55. If the administrator or fiduciary has discretion to construe plan provisions, an arbitrary or capricious standard of review applies. *Firestone*, 489 U.S. at 111, 109 S.Ct. at 954.

■ Here, although no plan has been produced, under either standard, Briks's continuing refusal to pay Scarso violates the statute. See *Blau v. Del Monte Corp*, 748 F.2d 1348 (9th Cir.1985). Accordingly, Briks owes Scarso the following in unpaid benefits: $3,205.46 from the First Investors Account; $1,500.79 from the Banker's Life Account and $443.69 from the First Trust Account. Additionally, Briks owes Scarso an award of prejudgment interest. See *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1219–20 (8th Cir.1981), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981).

### Statutory Penalties

Statutory penalties are provided for the failure or refusal to furnish information upon request to a participant or beneficiary. As noted above, Briks failed to supply Scarso with information regarding her benefits under the plan even after she asked for it. ERISA section 104(b)(4), 29 U.S.C. § 1024(b)(4) provides in relevant part, that "[t]he administrator shall, upon written request of any participant, furnish a copy of ... the ... instrument under which the plan is established or operated." ERISA section 502(c), 29 U.S.C. § 1132(c) provides that "[a]ny administrator who fails or refuses to comply with a request for any information ... (unless such failure or refusal results from matters reasonably beyond the control of the administrator) to furnish to a participant ... may in the court's discretion be personally liable to such participant ... in the amount of up to 100 dollars a day from the date of such failure or refusal."

■ In determining whether Scarso is entitled to a statutory award because of Briks's failure to supply her with the requested information, we may consider whether Briks's idleness prejudiced Scarso. *Kascewicz v. Citibank*, 837 F.Supp. 1312, 1322 (S.D.N.Y.1993) In this case, Scarso was prejudiced because she was forced to initiate a lawsuit. *Kascewicz*, 837 F.Supp. at 1320 (someone who is compelled to retain counsel and incur expenses to determine where he stands in relation to an ambiguous plan, has suffered an injury regardless of the ultimate conclusion of eligibility). Moreover, absent a plan description, it still remains unclear whether Briks in fact owed Scarso additional funds. However, prejudice in the form of a monetary loss is not a prerequisite to an

---

5. Scarso testified that she knew that Rivero was somehow involved in the pension, but she was not aware that he was the "sole person ... to set things up."

6. Briks testified that he considered hiring a private investigator, "but unfortunately, it involved fees and funds and it just never came to anything."

7. Briks's testimony regarding the whereabouts of the funds was inconsistent. At times, he testified that he was certain that Rivero stole all of the First Investor funds, and at one point he claimed: "I figured that the pension plan was null and void." Nonetheless, he also testified that Rivero told him that the funds which were on deposit at First Investors were rolled over into the Bankers Life and First Trust accounts.

award of civil penalties. See *Kascewicz*, 837 F.Supp. at 1320, 1322; *Curry v. Contract Fabricators*, 891 F.2d 842, 847 (11th Cir. 1990). We also consider the nature of the penalty which is designed more to punish irresponsible ERISA administrators and fiduciaries than to compensate the pensioner for an actual loss. To that end, we find it relevant that Briks repeatedly refused to provide Scarso with the requested information and did not provide any explanation for his inaction until the eve of trial. Moreover, his testimony at trial that his accountant disappeared with certain of his funds as well as all of the documents relating to Scarso's pension was not convincing.[8] Briks made no meaningful attempt to pursue the accountant, he did not report the defalcation to the authorities, and he made no attempt to reconstruct the records from other sources.[9] Briks's failure to supply Scarso the information required by Section 104(b)(4), established at trial, was unexcused and certainly unsatisfactorily unexplained. Accordingly, we find that Briks is penalized at fifty dollars per day from 30 days after Scarso's request, September 4, 1994 until the date of this judgment.

### Attorneys Fees

We also grant Scarso's motion for an award of attorney's fees for the present action. ERISA's authorization of recovery of attorney's fees is broad; section 1132(g) permits recovery of fees "in any action" under subchapter I (29 U.S.C. §§ 1001–1144) by a participant in a pension plan. The authorization was intended to enable pension claimants to obtain competent counsel and to distribute the economic burden of litigation in a fair manner. *Carter v. Montgomery Ward*, 76 F.R.D. 565, 568 (E.D.Tenn.1977). Courts, including the Second Circuit have established a five factor test as a guide in determining to award attorneys' fees in a given case. The governing factors are: (1) the offending party's bad faith or culpability; (2) the ability of the offending party to pay the fees and costs; (3) whether an award of fees would deter others from acting similarly under like circumstances; (4) the relative merits of the party's position; and (5) whether the action was filed to confer benefit on plan members generally. See *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987); *New York State Teamsters Council Health and Hospital Fund v. The Estate of De Perno*, 816 F.Supp. 138, 152 (N.D.N.Y. 1993); *Eddy v. Colonial Life Insurance Company of America*, 59 F.3d 201 (D.C.Cir. 1995).

This case warrants the application of attorneys fees. Briks is clearly at fault for refusing to pay Scarso money which he admits he owes her; second, there is no indication that Briks, a successful chiropractor, will not be able to afford Scarso's fees; third, requiring Briks to pay the fees will deter him and other ERISA fiduciaries and administrators from eschewing pension beneficiary requests; fourth, Briks has no plausible defense to Scarso's claims. Because this case is not likely to benefit the other members of the plan (Briks and Mrs. Briks), the final factor is not applicable here. Accordingly, Scarso is entitled to attorney's fees and costs in this case.

### CONCLUSION

Plaintiff shall, by January 5, 1996, serve and file a proposed judgment which includes, *inter alia*, unpaid benefits, prejudgment interest, costs and statutory penalties. Plaintiff shall also submit a detailed affidavit including contemporaneous time records in support of her request for attorneys fees. Defendant shall serve and file any response to plaintiff's submission seven days thereafter.

**SO ORDERED.**

---

8. See notes 6 and 7, supra.

9. See also notes 6 and 7, supra.