**LONG ISLAND AIRPORTS LIMOUSINE SERVICE CORP., Appellant,**

v.

**PLAYBOY–ELSINORE ASSOCIATES, Appellee.**

**No. 1363, Docket 84–7278.**

United States Court of Appeals, Second Circuit.

Argued June 6, 1984.

Decided July 17, 1984.

Michael S. Oberman, New York City (David S. Frankel, Kramer, Levin, Nessen, Kamin & Frankel, New York City and William M. Stewart, New York City, of counsel), for appellant.

Howard R. Reiss, New York City (Donovan, Leisure, Newton & Irvine, New York City, of counsel), for appellee.

Before OAKES and WINTER, Circuit Judges, and MISHLER, District Judge.*

OAKES, Circuit Judge:

Long Island Airports Limousine Service Corp. (LIALS) appeals from that portion of a final judgment of the United States District Court for the Eastern District of New York, Frank X. Altimari, Judge, granting defendant-appellee Playboy-Elsinore Associates' motion for summary judgment on the fourth count of LIALS' complaint charging Playboy with wrongful termination of an agreement between the parties. We reverse.

## FACTS

In November, 1980, LIALS and Playboy signed a "letter of intent," which provided that LIALS would operate a bus service between points on Long Island, New York, and the Playboy casino in Atlantic City, New Jersey. This agreement stated that the parties intended to "have a formal contract drawn up," at a later date, but that the letter of intent would serve as "the basis" for the formal contract. Among other terms, the agreement included an express reciprocal termination provision which permitted either party to terminate for cause upon 30 days' written notice.

On January 5, 1981, LIALS sent Playboy a proposed contract, which Playboy declined to execute, but which led to further discussions between the parties. Playboy then prepared and sent to LIALS a second agreement, dated March 25, 1981, which was executed by both sides. Under the terms of this agreement, LIALS was ob-

liged to provide daily bus service to the Playboy hotel for a one year period commencing April 27, 1981, "excepting with certain conditions under which either party may, with specified notice, terminate the agreement earlier." Under a section of the agreement entitled "Coach Exteriors," dealing with the graphics to be painted on the buses, the contract also included the following language: "Also, if for any reason whatsoever, it becomes imperative for Playboy Hotel to discontinue the working agreement with your company during the contract period, and on 30 days written notice, Playboy Hotel will bear the entire cost of painting and graphic conversion back to your company specifications . . . ." The agreement did not contain any other express reference to termination rights of the parties.

In December, 1981, four months prior to the end of the one year contract period, Playboy sent LIALS a letter stating that "it is necessary to discontinue our relationship with your company to provide bus service." No reasons were stated for the termination, and Playboy does not allege that LIALS breached any of its obligations under the contract. This action, which was commenced in New York state court, and then removed by Playboy to federal district court, contained six causes of action. Count 4 of the complaint—the only subject of this appeal[1]—alleged that Playboy had breached its agreement with LIALS, since Playboy could only terminate for cause and no cause had been cited by Playboy.

Rejecting a recommendation of the magistrate to whom the case had been referred,

---

* Of the Eastern District of New York, sitting by designation.

1. Count 1 alleged that Playboy breached LIALS' exclusive right to transport passengers from Long Island to the Playboy Hotel; count 2 that Playboy breached an advertising subsidy provision of the agreement; count 3 that Playboy breached a seat subsidy provision of the agreement; count 5 that Playboy conspired with an outside consultant in terminating the agreement; and count 6 that Playboy should be permanently enjoined from assisting any carrier in competing with LIALS' service to the Playboy Hotel. Playboy asserted two counterclaims,

which were eventually withdrawn with prejudice. Following completion of discovery, Playboy moved for partial summary judgment dismissing five counts of the complaint, including count 4. In a memorandum and order dated December 12, 1983, Judge Altimari dismissed counts 3, 4, 5 and 6, and denied the motion to dismiss count 1. On the eve of trial, Playboy again moved for partial summary judgment, seeking dismissal of count 2. This motion was granted. The case proceeded to trial on count 1 only; the jury ruled in favor of Playboy. Judgment dismissing each count of the complaint was entered on February 22, 1984.

Judge Altimari granted Playboy summary judgment on Count 4. Seizing on the language in the Coach Exterior section of the March, 1981, letter, quoted above, the judge held that the language constituted an unambiguous "unilateral termination clause," and that the parol evidence rule barred consideration of the November, 1980, letter of intent, with its requirement of cause, to "contradict" that clause.

On appeal, LIALS makes numerous arguments in support of reversal. It states that the section from the March, 1981, agreement relied on below was not a termination provision, "or, at the very least, ... not so clearly a termination provision that parol evidence must be excluded." Appellant's position is that the November, 1980, letter of intent was not entirely superceded by the March, 1981, letter, and that the former clearly provides for termination only for cause. Alternatively, LIALS claims that the March, 1981, letter's language that "with certain conditions ... either party may, with specified notice, terminate the agreement" before the one year term, demonstrates reciprocal termination rights inconsistent with the lower court's reading, and thus, that there exists a material factual dispute which renders summary judgment inappropriate.

Playboy insists that the language in the March, 1981, letter is an unambiguous termination agreement, that the March, 1981, agreement was intended to supercede the November, 1980 letter of intent, and thus that the parol evidence rule was properly invoked. Moreover, it asserts that LIALS failed to make many of its arguments to the district court, and that it thus waived the claims.

## DISCUSSION

■ The law in this circuit is clear: "where a contract is not wholly unambiguous, summary judgment must be denied even where both parties move for pre-trial resolution." *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 10 (2d Cir.1983); *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.

1975). Here, the March, 1981, agreement is simply not "wholly unambiguous." Most fundamentally, it is not at all clear that the section of the agreement relied on by the district court constitutes a termination agreement. The clause is, after all, buried in the midst of a discussion about how buses will be decorated, a surprising if not novel place to find a contractual provision as important as the right to terminate. Moreover, in that section of the March, 1981, agreement dealing with the term of the agreement—a more logical place to find a termination clause—a one year period is established "excepting with certain conditions under which either party may, with specified notice, terminate the agreement earlier." As appellant notes, this reference to reciprocal rights, which may be exercised under certain subsequently unspecified "conditions," is not consistent with the district court's holding that the agreement conferred upon Playboy a unilateral, unconditional right of termination. In addition, as appellant argues, even the language relied on below contains an ambiguity: it states, after all, that "if for whatever reason whatsoever, it becomes *imperative,*" then Playboy may cancel. Quite conceivably, the "for whatever reason" may refer to the unspecified conditions referred to earlier in the March 25, 1981, agreement or to the reciprocal for cause provisions of the November, 1980, letter of intent. The meaning of the word "imperative" is also by no means entirely clear in this context. We do not suggest now how the clauses or language should be reconciled, only that they are not so clearly unambiguous as to be capable of disposition on summary judgment.

■ We also disagree with the application of the parol evidence rule, which resulted in exclusion of all references to the November, 1980, letter agreement between the parties. As this court has stated, "where contract language is susceptible of at least two fairly reasonable meanings, the parties have a right to present extrinsic evidence of their intent at the time of contracting." *Schering,* 712 F.2d at 9; com-

pare *Marine Midland Bank Southern v. Thurlow,* 53 N.Y.2d 381, 442 N.Y.S.2d 417, 425 N.E.2d 805 (1981), with *Traders' National Bank of Rochester v. Laskin,* 238 N.Y. 535, 144 N.E. 784 (1924). While nothing we say goes to the merits, appellant's assertion that the March, 1981, agreement incorporates portions of the November, 1980, letter of intent is surely not unreasonable, and accordingly, the district court should have permitted the appellant to introduce evidence from the November, 1980, letter of intent.

The argument that the letter of intent is nevertheless barred by the parol evidence rule because it is inconsistent with or contradicts the March, 1981, contract begs the question: it assumes that the "Coach Exteriors" provision is relevant to the question of termination, and that it is unambiguous, an assumption we reject as unwarranted here on summary judgment. The same is true of the argument that the appellant's interpretation would render "the termination provision" meaningless.

Finally, a fair reading of the appellant's papers below does not bear out the appellee's claims of waiver. Although LIALS did not make exactly the same arguments below, it consistently argued that the letter of intent and the March, 1981, contract had to be read together, that there were disputed questions of fact, and that the parties could cancel the contract only for cause. To the extent that the appellant's brief raises different arguments in support of the same conclusions and claims, it simply reflects an attempt to address the specific reasoning of the district court. *See North American Leisure Corp. v. A & B Duplicators, Ltd.,* 468 F.2d 695, 698–99 (2d Cir. 1972). There was no waiver.

Judgment reversed and cause remanded.