**BURGER KING CORPORATION, Plaintiff,**

v.

**The HORN & HARDART COMPANY, Defendant.**

**No. 87 Civ. 6494 (WK).**

United States District Court, S.D. New York.

April 13, 1989.

---

Stephen R. Lang, Eric M. Nelson, Alan J. Sorkowitz, Breed, Abbott & Morgan, New York City, for plaintiff.

Ronald S. Rauchberg, Steven Krane, Michael S. Elkin, Michael D. Povman, Proskauer Rose Goetz & Mendelsohn, New York City, for defendant.

### MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

This hotly-contested case concerns a 1980 Settlement Agreement which, according to both parties, was designed to avoid future hostilities.[1] The Agreement not only failed

to head off litigation but, by its loose wording, engendered it. At issue is whether Horn & Hardart Company's Burger King restaurant franchises are governed by twenty-year terms, as defendant Horn & Hardart contends, or by fifteen-year terms, as plaintiff Burger King Corporation contends. For reasons which follow, we grant Horn & Hardart's cross-motion for partial summary judgment on the term issue and deny Burger King's motion for summary judgment. We dismiss without prejudice Horn & Hardart's counterclaim concerning franchise renewal or extension.

## BACKGROUND

In 1973, the parties entered into a Development Agreement which gave Horn & Hardart the option of transforming its automats into Burger King restaurants.[2] Between 1974 and 1977, Horn & Hardart exercised its option thirteen times, each time signing a Development Franchise Agreement with Burger King that provided that the initial term of the franchise was to expire at midnight on the day preceding the fifteenth anniversary of the date the restaurant opened for business.[3] During 1978 and 1979, Horn & Hardart opened seven more Burger King restaurants governed by franchise agreements differing from the Development Franchise Agreement. Six of the seven agreements contained "same or similar" clauses barring Horn & Hardart from engaging in any business that was the same or similar to a Burger King restaurant.[4] In 1979, based primarily on those clauses, Burger King filed suit in New York and Florida, seeking to prevent Horn & Hardart from developing Arby's restaurants or, in the alternative, to terminate Horn & Hardart's franchises.[5]

In November 1980, after Burger King lost its motion in this court for a preliminary injunction, the parties ended the lawsuits by entering into a Settlement Agreement.[6] That Agreement provided that

Horn & Hardart would retain fourteen franchises, none of which would be subject to a same or similar clause. It also included an "anti-discrimination clause", which barred Burger King from taking actions or adopting policies which "unreasonably discriminate[d] in an adverse fashion against" Horn & Hardart.[7] According to Horn & Hardart, one of the chief purposes of that clause was to ensure that Burger King would consider renewing or extending Horn & Hardart's franchises on the same basis as it did those of other franchisees.[8]

As the fifteen-year anniversary of the opening of the first of Horn & Hardart's fourteen remaining franchises neared, Burger King filed this action, asserting that the plain language of the Settlement Agreement provided for fifteen-year terms. Horn & Hardart, in addition to vehemently denying this, brought a counterclaim alleging, in substance, that Burger King's efforts to terminate the franchises violated the anti-discrimination clause.

Both parties rely on Section 2 of the Settlement Agreement to press their respective arguments about the length of the franchise terms. That section reads as follows:

> H & H [Horn & Hardart] shall retain 14 Burger King franchises which shall be governed by the existing form of franchise agreement set forth as Exhibit B. Set forth on Schedule 1 is a list by address of each of these 14 franchises indicating the expiration date of the initial term of each.

Exhibit B to the Settlement Agreement is a Burger King Restaurant Franchise Agreement. Horn & Hardart directs our attention to Section II B. of Exhibit B, which states that "[t]he term of this Franchise Agreement shall commence on the date Franchisee's restaurant opens for business and shall expire at midnight on the day

2. Def. Exh. 2.

3. Def. Exhs. 3 and 23, ¶ II(B).

4. Def. Exhs. 24 and 25, ¶ 17.

5. Schupak Aff. ¶ 5.

6. Pl.Brief, Ex. 1.

7. Settlement Agreement, § 7.1.

8. Schupak Aff., ¶ 10(a).

preceding the twentieth (20th) anniversary of said opening, unless sooner terminated in accordance with the terms of the conditions hereof." [9]  Burger King, on the other hand, urges that we take note of Schedule 1, a chart that lists fourteen Burger King restaurants opposite franchise expiration dates fifteen years after the opening dates of each.

## DISCUSSION

Despite Burger King's exhortations to the contrary, we cannot help but conclude that these two competing parts of the Settlement Agreement create an ambiguity as to the length of the franchise terms.  It is black-letter law that, where a term of an agreement is ambiguous, we are to ascertain the actual intent of the parties by examining the evidence concerning its negotiating history.[10]

The uncontradicted affidavits and other evidence submitted by Horn & Hardart support the conclusion that the parties intended that the franchises have twenty-year terms.  First of all, it is clear that the parties negotiated which franchise agreement would be attached to the Settlement Agreement.  Early drafts of Section 2 specified that the standard "Development Franchise Agreement", which provided for fifteen-year terms, would govern the franchises.[11]  Subsequent drafts reviewed by both parties, however, deleted all references to the Development Franchise Agreement in favor of the words "form of franchise agreement set forth as Exhibit B." [12] A May 28, 1980, memorandum from Donald Schupak, Horn & Hardart's chief negotiator, entitled "Language Changes Pursuant to Agreement" also noted the change.[13] The Franchise Agreement ultimately attached to the Settlement Agreement as Exhibit B was the only one of the twenty then in effect for Horn & Hardart franchises that both omitted the "same or similar" clause as per the parties' agreement and granted a twenty-year term, further demonstrating that Exhibit B was annexed to the Settlement Agreement as a memorial of an agreement between the parties that the franchises were to have twenty-year terms.[14]

In contrast, neither Donald Schupak nor Lee Abrams, chief negotiators for Horn & Hardart and Burger King respectively, recall any negotiations concerning Schedule 1.[15]  Nor does Abrams recall anyone suggesting that the terms of the franchises under the Settlement Agreement were governed by Schedule 1 and not by Exhibit B.[16] That Exhibit B and not Schedule 1 was the focus of the parties' agreement as to franchise term is also borne out by the fact that, shortly after the Settlement Agreement was signed, the parties discovered that Schedule 1 listed the wrong fourteen restaurants.[17]  Philip Evans, Burger King's in-house counsel, corrected the error in a November 6, 1980 mailgram, which listed the stores by number only and did not specify expiration dates.[18]  Handwritten across a November 30, 1980 letter to Philip Evans concerning Schedule 1 is the notation "This is a list of stores.  See my correcting mailgram." [19]

Finally, Horn & Hardart has submitted affidavits from two Horn & Hardart executives and a member of Horn & Hardart's

---

**9.** The latter part of the clause providing for early termination is not at issue here.

**10.** *See, e.g., Corning Glass Works v. Southern New England Telephone Co.* (W.D.N.Y.) 674 F.Supp. 999, 1008, *aff'd,* (2d Cir.1987) 835 F.2d 451; *Long Island Airports Limousine Service Corp. v. Playboy–Elsinore Associates.* (2d Cir. 1984) 739 F.2d 101, 103; *Arbuckle v. Lumbermens Mutual Casualty Co.* (2d Cir.1942) 129 F.2d 791, 793; *M. O'Neil Supply Co. v. Petroleum Heat & Power Co.* (Ct.App.1939) 280 N.Y. 50, 56, 19 N.E.2d 676.

**11.** Def. Exhs. 6, 7.

**12.** Def. Exhs. 8 and 10; Abrams Tr. 60–63, 152–54.

**13.** Def. Exh. 9, p. 2.

**14.** Krane Aff. ¶ 4.

**15.** Schupak Aff. ¶¶ 14–16; Abrams Tr. 80–81.

**16.** Abrams Tr. at 164.

**17.** Schupak Aff. ¶ 17.

**18.** Def. Exh. 5.

**19.** Def. Exh. 13.

board of directors stating that they remembered that the outcome of the negotiations was to extend the franchises to twenty years.[20] Franklin Levy, another Horn & Hardart executive, testified that he had the same recollection.[21] Burger King has not submitted any evidence that its executives or directors had a different understanding.

### CONCLUSION

We therefore conclude that the parties intended to agree to twenty-year franchise terms and grant summary judgment to Horn & Hardart on Burger King's termination claim. With Horn & Hardart's consent, we dismiss without prejudice its counterclaim against Burger King.[22]

SO ORDERED.

---

**20.** Schupak Aff. ¶¶ 11–12; Farkas Aff. ¶ 1; Rosenfeld Aff. ¶ 3.

**21.** Def. Exh. 11

**22.** Stephen Krane, counsel for Horn & Hardart, in his affidavit in support of bifurcation stated as follows:

> Horn & Hardart is willing to discontinue this [anti-discrimination] claim in light of Grand Metropolitan's recent acquisition of Pillsbury, Burger King's parent corporation. Horn & Hardart has always enjoyed a constructive working relationship with Burger King's regional staff and field employees; now that Pillsbury's and Burger King's senior management will be changing, Horn & Hardart is confident that it will have good relations with them as well. Thus, Horn & Hardart expects that within the next five years *its franchises* will be willingly renewed and that this issue will never have to be litigated. Krane Aff., January 3, 1989, ¶ 5, n. 2.