**BURGER KING CORPORATION,**
Plaintiff–Appellant,

v.

**The HORN & HARDART COMPANY,**
Defendant–Appellee.

Nos. 223, 224, Dockets 89–7440, 89–7558.

United States Court of Appeals,
Second Circuit.

Argued Oct. 19, 1989.

Decided Jan. 19, 1990.

Eric M. Nelson, New York City (Stephen R. Lang, Alan J. Sorkowitz, Jill I. Braverman, Breed, Abbott & Morgan, New York City, of counsel), for plaintiff-appellant.

Ronald S. Rauchberg, New York City (Steven C. Krane, Michael S. Elkin, Michael D. Povman, Proskauer Rose Goetz & Mendelsohn, New York City, of counsel), for defendant-appellee.

Before LUMBARD, MESKILL and WINTER, Circuit Judges.

MESKILL, Circuit Judge:

These appeals require us to consider the propriety of the district court's disposition by summary judgment of a question of contract interpretation. Plaintiff Burger King Corporation (Burger King) appeals from two judgments entered in the United States District Court for the Southern District of New York, Knapp, J., denying Burger King's motion for summary judgment and granting defendant Horn & Hardart Company's (Horn & Hardart) cross-motion for summary judgment. Each party sought in its motion a declaration regarding the term of certain franchises. Horn & Hardart is a franchisee of Burger King, and maintains that its franchises have twenty year terms. Burger King asserts that the franchises have fifteen year terms, and wishes to terminate those franchises at the end of the fifteen year period.

The district court concluded that the agreement between the parties regarding the term of the franchises was ambiguous, and then deduced from the extrinsic evidence submitted by the parties that the franchises had twenty, rather than fifteen year terms. Because we believe that triable issues of fact exist concerning the contemplated term of the franchises, we vacate the district court's amended final judgment dated May 17, 1989 to the extent

that it granted Horn & Hardart's summary judgment motion and remand for trial. Burger King's appeal from the judgment dated April 19, 1989 is dismissed for lack of appellate jurisdiction. The district court's opinion is reported at 710 F.Supp. 103 (S.D. N.Y.1989).

## BACKGROUND

The pleadings and other evidentiary materials submitted by the parties establish the following facts. Defendant Horn & Hardart, a Nevada corporation, has been a franchisee of plaintiff Burger King, a Florida corporation, for many years, and operates several Burger King restaurants in the New York metropolitan area. In 1980, Burger King and Horn & Hardart entered into a settlement agreement (Settlement Agreement) to resolve litigation arising from Horn & Hardart's operation of competing Arby's restaurants. The present dispute focuses on section 2 of the Settlement Agreement (section 2), which provides:

> [Horn & Hardart] shall retain 14 Burger King franchises which shall be governed by the existing form of franchise agreement set forth as Exhibit B. Set forth on Schedule 1 is a list by address of each of these 14 franchises indicating the expiration date of the initial term of each.

From this deceivingly simple paragraph a vigorous dispute has arisen. Prior to the Settlement Agreement, some of the fourteen franchises mentioned in section 2 were governed by franchise agreements that provided for fifteen year terms, and others by agreements providing for twenty year terms. Schedule 1 to the Settlement Agreement (Schedule 1) lists these fourteen franchises, and across from each franchise it lists the expiration date provided for in the original franchise agreement that applied to that franchise. Thus, some of the dates in Schedule 1 reflect fifteen year terms, and others twenty year terms. Exhibit B to the Settlement Agreement (Exhibit B), however, which now "governs" these fourteen franchises, is a franchise agreement that provides for a twenty year term. The question, then, is whether Schedule 1 or Exhibit B controls the franchise terms.

The fifteen year date of some of Horn & Hardart's franchises now approaches, and Burger King wishes to terminate those franchises. Burger King commenced this action seeking a declaratory judgment that, under section 2 of the Settlement Agreement, the parties agreed on the expiration dates in Schedule 1. Horn & Hardart counterclaimed for a declaratory judgment that Exhibit B, which provides for a twenty year term, is to govern all the franchises. Horn & Hardart also asserted a second counterclaim that Burger King violated the terms of the Settlement Agreement by refusing to renew the franchises in issue.

Burger King moved for summary judgment on the term issue, and Horn & Hardart cross-moved for summary judgment on both counterclaims. The district court found the language of the Settlement Agreement ambiguous as to the term of the franchises, and admitted extrinsic evidence on the intended meaning of section 2. The court then granted Horn & Hardart's motion on the term issue, denied Burger King's motion, and, with Horn & Hardart's consent, dismissed Horn & Hardart's second counterclaim without prejudice. 710 F.Supp. at 106.

The clerk entered judgment on April 19, 1989. Burger King timely filed a notice of appeal from that judgment. Judge Knapp then entered an amended judgment on May 17, 1989, and Burger King timely filed a notice of appeal from this judgment as well. The parties agree that New York law governs this diversity action.

## DISCUSSION

### A. *Appellate Jurisdiction*

The first matter that we must address is exactly which appeal is before us. This question is something of a non-issue because Horn & Hardart does not dispute that Burger King filed timely notices of appeal from both the original and the amended judgment. The only problem presented is which appeal we should consider.

The initial judgment entered by the clerk recites the district court's grant and denial of the summary judgment motions and directs "[t]hat Horn & Hardart have judgment against Burger King on the termination claim, and ... that the counterclaim against Burger King be and it is hereby dismissed." The amended final judgment entered by Judge Knapp orders "[t]hat the initial term of Horn & Hardart's first eight Burger King franchises ... is a period of 20 years from the date each restaurant first opened for business[; t]hat Horn & Hardart's Second Counterclaim is dismissed, on consent and without prejudice [and t]hat Burger King's complaint is dismissed, with prejudice."

■ The parties agree that the district court's purpose in amending its judgment was simply to clarify the court's intended disposition of the case. A district court clearly has power to make this type of clerical correction. *See* Fed.R.Civ.P. 60(a). Normally, Burger King's filing of the notice of appeal from the first judgment would terminate the district court's power to amend the judgment without leave of the Court of Appeals. *See id.; Leonhard v. United States*, 633 F.2d 599, 609–10 (2d Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). The district court did not seek our permission to amend the judgment, but we nevertheless believe that it retained power to make the amendment.

We deem the initial judgment entered by the clerk not to be final because it did not dispose of Burger King's complaint. The judgment also is unclear as to the term of Horn & Hardart's franchises and as to which of Horn & Hardart's two counterclaims is dismissed. *Cf. Foremost Sales Promotions, Inc. v. Director, Bureau of Alcohol, Tobacco and Firearms*, 812 F.2d 1044, 1045–46 (7th Cir.1987) (per curiam) (separate order deemed non-final when parties sought declaratory judgment, district judge did not select language in order and disposition of case unclear); *Rappaport v. United States*, 557 F.2d 605, 606 (7th Cir. 1977) (per curiam) (document entered granting motion for summary judgment but failing to dispose of case deemed non-final). Consequently, Burger King's notice of appeal from this judgment was premature, and did not divest the district court of jurisdiction to amend the judgment. *See Leonhard*, 633 F.2d at 610. Because the appeal from the first judgment was premature, we dismiss that appeal for lack of appellate jurisdiction and consider only the appeal from the amended judgment entered on May 17, 1989.

## B. *The Settlement Agreement*

### 1. *Ambiguity*

The first question on the merits is whether the Settlement Agreement is ambiguous as to the term of the franchises. We conclude that it is.

■ Parol evidence is admissible to aid in interpretation of a contract only when the language of the contract is ambiguous. *See International Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96, 100 (2d Cir.1989); *Namad v. Salomon Inc.*, 74 N.Y.2d 751, 753, 543 N.E.2d 722, 723, 545 N.Y.S.2d 79, 80–81 (1989). Contract language is ambiguous if it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract alone. *Curry Road Ltd. v. K mart Corp.*, 893 F.2d 509, 511 (2d Cir.1990); *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 572–73, 489 N.E.2d 231, 233, 498 N.Y.S.2d 344, 346 (1986); *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 1282, 413 N.Y.S.2d 352, 355 (1978); *see also Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 734 & n. 9 (2d Cir.1984) (disagreeing with trend toward making contextual inquiry to determine whether language ambiguous).

Burger King argues that the district court erred in denying its motion for summary judgment because the Settlement Agreement unambiguously provides for fifteen year franchise terms, and asserts that there was no need for the district court to look to extrinsic evidence. Burger King argues (1) that specific provisions control

over general provisions, and therefore the second sentence of section 2, which specifically refers to expiration of the franchises, controls over the first sentence; (2) that when two documents are construed, the document prepared specifically for the transaction controls, and therefore Schedule 1, which was prepared for the Settlement Agreement, controls over the general form of franchise agreement used as Exhibit B; and (3) that every provision of a contract should be given effect, and Burger King's interpretation gives effect to both the first and second sentences of section 2, while Horn & Hardart's interpretation nullifies the second sentence.

These principles of contract construction are only guides to interpretation, however, and not rules requiring blind adherence. With these principles in mind, we believe that section 2 of the Settlement Agreement is reasonably susceptible of more than one interpretation. It states that Schedule 1 sets forth the "initial" term of each franchise. This could be construed to mean that Schedule 1 contains the original term of each franchise, and that Burger King and Horn & Hardart intended to change all franchise terms to twenty years by providing that all franchises are now governed by Exhibit B. Alternatively, section 2 might mean that Schedule 1 in fact contains the expiration dates of all franchises, and the only significance of the word "initial" might be that the franchise terms may later be renewed. The parties' intended meaning simply is not apparent from the face of the agreement, and examination of extrinsic evidence of intent is therefore appropriate.

### 2. Extrinsic Evidence of Intent

Summary judgment normally is inappropriate when a contractual term is ambiguous because "a triable issue of fact exists as to its interpretation." *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir.1989); *see Curry Road*, 893 F.2d at

512; *Long Island Airports Limousine Serv. Corp. v. Playboy–Elsinore Assocs.*, 739 F.2d 101, 103 (2d Cir.1984) (citing *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)). If there is conflicting extrinsic evidence regarding the parties' intent, the district court may only identify the issues at the summary judgment stage, not resolve them. *See Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir.1983). Thus, the district court's grant of summary judgment was proper only if the evidence of intent that Burger King presented does not conflict with Horn & Hardart's evidence.

We conclude that the extrinsic evidence of intent before the district court does conflict, and that summary judgment therefore was inappropriate. The conflict arises primarily from the affidavit of Donald Schupak, Chairman and Chief Executive Officer of Horn & Hardart, from the affidavit of Philip Evans, formerly in-house counsel for Burger King, and from the deposition testimony of Lee Abrams, outside counsel for Burger King. Schupak states in his affidavit that the dates on Schedule 1 have no significance, and that the parties had no understanding that the dates on Schedule 1 were in fact the expiration dates of Horn & Hardart's franchises. Affidavits of other Horn & Hardart officials contain similar statements. Philip Evans' affidavit, however, directly contradicts Schupak as to Burger King's understanding of Schedule 1.[1] Also, Lee Abrams' deposition testimony, although marked by a general lack of recall, contains a definite "no" to the question whether anyone ever suggested that Exhibit B would control the franchise terms.

In addition, there is a factual issue as to what physically makes up the Settlement Agreement. After the parties had signed the Settlement Agreement, Horn & Hardart discovered that Schedule 1 incorrectly listed three properties that it no longer owned and omitted three properties that it did own. Donald Schupak asked Burger

---

1. Counsel for Horn & Hardart maintained at oral argument that Philip Evans was not involved in the major part of the negotiations concerning the Settlement Agreement, and that

he therefore is not competent to swear to the meaning Burger King attached to Schedule 1. This is a question for the trier of fact.

King to confirm the mistake "right away," and Philip Evans sent a mailgram listing the affected properties, but omitting any reference to expiration dates. What happened after this point is a source of controversy. Burger King contends that Gary Forst, outside counsel for Horn & Hardart, requested a revised Schedule 1, which Evans prepared and sent, complete with expiration dates for all properties. Horn & Hardart disputes both that it ever agreed to insertion of this revised Schedule 1 in the Settlement Agreement and that Gary Forst had any authority to act for it.

"Revised" Schedule 1 obviously is relevant to the issue whether the parties intended the Schedule 1 dates to have any significance. Horn & Hardart maintains that the absence of expiration dates in Philip Evans' mailgram means that Schedule 1's only significance is to identify the fourteen franchises referred to in the Settlement Agreement. If Burger King intended to prepare a revised Schedule 1, however, the only function of the mailgram was to acknowledge the error in the original Schedule 1. Thus, factual questions exist concerning the circumstances behind the preparation of revised Schedule 1 and the parties' agreement (or lack thereof) to replace the original Schedule 1, all of which are material to the parties' intent regarding the franchise terms.

### CONCLUSION

The parties' Settlement Agreement is ambiguous regarding the term of Horn & Hardart's franchises, and the district court correctly denied Burger King's motion for summary judgment. Because the agreement is ambiguous, examination of extrinsic evidence is proper to determine the intent of the parties. The extrinsic evidence, however, is conflicting, and raises factual issues that render the district court's grant of Horn & Hardart's motion for summary judgment inappropriate. The amended final judgment of the district court dated May 17, 1989 is therefore vacated to the extent that it granted Horn & Hardart's summary judgment motion, and the case is remanded for trial. Burger King's appeal

from the judgment dated April 19, 1989 is dismissed for lack of appellate jurisdiction.

No costs.