Edward T. **HANLEY**, et al., Plaintiffs,

v.

**LARK DELI CORP.** d/b/a Sarge's Deli, Defendant.

No. 97 Civ. 3622(LAK).

United States District Court, S.D. New York.

April 24, 1998.

Joseph Gulmi, Annmarie Venuti, James J. Curto, Richards & O'Neil LLP, for Plaintiffs.

Christopher Borruso, Frank & Breslow LLP, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is another dispute between the trustees of the Hotel Employees and Restaurant Employees International Union Pension and Welfare and Pension Funds (the "Funds") and an employer concerning the meaning of a settlement which they concluded in order to settle a prior dispute concerning unpaid benefit plan contributions.[1] This is the Court's decision after a non-jury trial.

### Facts

The defendant operates Sarge's Deli on Third Avenue in Manhattan and has been signatory to successive collective bargaining agreements ("CBAs") with Local 100, Hotel Employees & Restaurant Employees, AFL–CIO, covering the period relevant to this case. Pursuant to those agreements, defendant was obliged to make contributions to and was bound to the terms of the Fourth Amended and Restated Agreement and Declarations of Trust creating the Funds. The

trust agreements empowered the Funds to audit the books and records of contributing employers in order to ensure that the contractually required contributions were made.

### The Prior Action and Settlement

On January 19, 1995, the Funds commenced an action in this Court (the "Prior Action"). The complaint alleged that the defendant breached the CBAs by failing to make the required monthly contributions for the period December 1993 through October 1994 and that a total of $6,486.65 was due and owing, inclusive of accrued interest and late fees.[2] It further asserted that the Funds were entitled to an audit of the defendant's business records relating to each of its employees during the terms of the CBAs.[3]

In February 1995, while the action was pending, the Funds demanded an audit of the defendant's books and records for the calendar year 1994.[4] While the record is not entirely clear, it appears that the audit began some time later. In any case, a dispute arose concerning its scope. Very few of the defendant's employees were members of the bargaining unit represented by Local 100, but the Funds nevertheless demanded—and the defendant refused—access to records concerning the non-unit employees.[5]

While the precise sequence of events is neither clear nor material, it appears that there were unconsummated settlement discussions during the summer of 1995. In November 1995, counsel appeared before Judge Keenan, before whom the Prior Action was pending, at which time defendant's attorney either offered or indicated that he previously had offered $7,800 in settlement of the case. Plaintiffs' counsel then advised Judge Keenan that no settlement had been reached because the 1994 audit had not been completed in consequence of the dispute over access to records of non-unit employees and the

---

1. The undersigned tried another such case only last year. *Hanley v. Sevilla Restaurant & Bar,* No. 96 Civ. 3193(LAK), 1997 WL 30954 (S.D.N.Y. Jan.24, 1997).

2. PX 5, ¶ 9.

3. *Id.* ¶ 11.

4. Letter, Feb. 22, 1996, included in PX 13.

5. *See, e.g.,* PX 9–10.

Funds' insistence on retaining the right to complete it.[6]

Following the November conference, defendant changed counsel and renewed efforts to settle the case ensued. Mr. Cutro, one of the Funds' attorneys, briefed Mr. Farrell, one of defendant's new counsel, on the status of the matter, noting in substance that the $7,800 figure was acceptable but that the Funds would not give up the right to complete the 1994 audit, which required access to information regarding the non-unit employees.

On March 11, 1996, a meeting took place among Mr. Frank, the new lead counsel for the defendant, Ms. Venuti and Mr. Curto on behalf of the Funds, and Mr. Hobson, who represented the Funds' auditor. As the $7,800 figure was acceptable to both sides and the only outstanding issue was the Funds' right to access to information regarding non-unit employees, the latter topic was virtually the only subject of discussion. Mr. Frank and Ms. Venuti ultimately resolved the dispute concerning the 1994 audit by the defendant agreeing that it would give access to payroll information for non-unit employees other than management personnel and defendant's bookkeeper, for whom it would give an aggregate annual payroll figure. There was no mention whatever of the Funds' auditing any period earlier than 1994. Nor was there any discussion of the effect of the settlement or the $7,800 payment on the Funds' right to claim additional amounts in respect of any period prior to November 1, 1994.

*The Settlement Papers*

On March 11, 1996, the parties executed two documents, a settlement agreement and a stipulation and order dismissing the Prior Action which was "so ordered" by Judge Keenan on the same day.

The provisions of the settlement agreement relevant here were paragraphs 1 and 6. Paragraph 1 recited that (1) the Funds had determined that the defendant's liability for past due contributions and interest for the period from November 1994 to January 1995 was $11,215.70 inclusive of interest, fees and liquidated damages accrued through June 12, 1995, and (2) "the parties have agreed to settle this matter for the sum of $7,800.00."[7] Paragraph 6 provided: "The ... Funds reserve the right to audit the books and records of the Employer upon seven (7) days' notice, pursuant to the Funds' Audit Procedures and Guidelines."[8] The stipulation and order of dismissal provided that the "action be dismissed in its entirety, with prejudice, pursuant to the Federal Rules of Civil Procedure, Rule 41(a)(1)."[9]

As will be apparent to the reader, the dates included in paragraph 1 of the settlement agreement were incorrect. The parties quickly noticed the error and executed amended settlement documents on March 29, 1996. The amended settlement agreement was identical in all material respects except that the dates recited in paragraph 1 were December 1993 to October 1994. In place of a stipulation of dismissal, however, the parties had Judge Keenan "so order" the modified settlement agreement. Judge Keenan, in addition, entered a further order providing in relevant part that "this Amendment to Stipulation and Order of Dismissal and the amended Settlement Agreement attached hereto, amends the March 13 [*sic*], 1996 Stipulation and Order of Dismissal, as well as the Settlement Agreement attached thereto."[10]

*Post–Settlement Events*

Following the settlement, the parties moved forward to implement the compromise regarding completion of the 1994 audit. On March 19, 1996, Mr. Frank provided the Funds' auditor with the lump sum payroll figure for management employees and the payroll journal for all of defendant's employees, exclusive of management personnel and

---

**6.** Frank Aff. Ex. B. (The papers on the motion for summary judgment were agreed to be part of the trial record.)

**7.** PX 14, settlement agreement, ¶ 1.

**8.** *Id.* ¶ 6.

**9.** *Id.,* stipulation and order of dismissal.

**10.** PX 15.

the bookkeeper.[11] Further information followed in May 1996.[12]

On June 12, 1996, the Funds' auditor met with Mr. Frank and, briefly, defendant's principal to convey the results of the 1994 audit. She advised that the Funds wished to expand the audit to cover the period 1991 through 1993 in view of the findings in respect of 1994.[13] Mr. Frank initially responded that he would not permit the expansion absent a formal written request. The auditor subsequently sent him a copy of the auditor's February 1995 letter, which had indicated that the audit might be expanded if the review of 1994 records revealed significant inaccuracies.[14]

In October 1996, Mr. Frank, apparently after prompting by the auditor, responded that neither payroll records nor other employee information was available for the 1991–93 period.[15] The Funds' counsel and auditor then requested authorizations to obtain the release from the Internal Revenue Service of the defendant's relevant records for the period in question.[16] When further cooperation was not forthcoming, the Funds' counsel, on April 11, 1997, sent a letter to Mr. Frank asserting that the defendant's actions breached the CBA and the settlement agreement and threatening suit. Mr. Frank responded, for the first time, that all welfare fund issues through October 1994 had been settled and that all necessary information regarding the November–December 1994 period had been provided to the auditors.

This action followed.

### Discussion

Plaintiffs' position is that the 1996 settlement (1) resolved only the Funds' claims for delinquencies that were apparent on the face of monthly reports that had been filed by the defendant for the period January through October 1994, and (2) did not affect their rights to (i) audit the defendant, and (ii) recover any unpaid contributions that any audit might reveal, in either case for any period. The defendant, on the other hand, maintains that the Funds are foreclosed either from auditing or recovering unpaid contributions for any period prior to November 1, 1994, both by the *res judicata* effect of the stipulation and order of dismissal and by the settlement agreement, as amended.

### The Settlement Agreement

■ The initial question in considering the settlement agreement is the universe of evidence relevant to the determination. If the agreement is integrated and unambiguous, the parol evidence rule bars consideration of parol evidence to vary, contradict, add to or explain its terms.[17] If the agreement is ambiguous, however, parol evidence is admissible to help explain the ambiguity.[18] Moreover, as in *Hanley*, the Court regards consideration of the circumstances in which an agreement is executed to be appropriate in understanding the writings irrespective of the parol evidence rule.[19]

■ In this case, the Court finds that the parties intended the settlement agreement to constitute a complete integration of their bargain. The Court, however, finds that the settlement agreement is ambiguous in at least two respects.

First, paragraph 1 is unclear as to the claim that was settled by the $7,800 payment. There are two possibilities. On the one hand, the recitation that "this matter" was being settled for that sum, particularly in conjunction with the execution of a stipulation and order of dismissal with prejudice, suggests that the "matter" begin settled was

---

**11.** PX 16.

**12.** PX 17.

**13.** *E.g.*, Winter Aff. ¶ 4 & Ex. A.

**14.** *Id.* Ex. B.

**15.** PX 21.

**16.** PX 22–23.

**17.** *E.g., Hanley, supra,* at *2; *Marine Midland Bank–Southern v. Thurlow,* 53 N.Y.2d 381, 387, 442 N.Y.S.2d 417, 419, 425 N.E.2d 805 (1981).

**18.** *E.g., Investors Ins. Co. of Am. v. Dorinco Reins. Co.,* 917 F.2d 100, 104 (2d Cir.1990); *Hanley, supra,* at *2.

**19.** *Hanley,* at *2; *see Fireman's Fund Ins. Cos. v. Siemens Energy & Automation, Inc.,* 948 F.Supp. 1227, 1233–34 (S.D.N.Y.1996).

the Prior Action and, under familiar rules of merger and bar, that all claims arising out of the same cause of action, whether or not asserted, would be foreclosed.[20] On the other hand, certain of the circumstances cut the other way. The complaint in the Prior Action sought to recover unpaid contributions only for the period December 1993 through October 1994. Moreover, the use of the phrase "this matter" in describing the object of the settlement occurred in paragraph 1, which dealt only with the unpaid benefit plan contributions for that period, suggests that the $7,800 payment was made in settlement only of contribution liabilities thus far asserted and only for that limited period.

Second, there is uncertainty as to the meaning of the Funds' reservation of audit rights in paragraph 6. One possibility is that the Funds meant only to indicate that their settlement of the action did not release the defendant from its contractual obligation to submit to audits in the future.[21] On the other hand, the use of the word "reserves" is consistent with an intention by the Funds to preserve all audit rights, both prospective and retrospective, notwithstanding the settlement.

Ambiguity for parol evidence rule purposes turns on "whether the contractual language 'is reasonably susceptible of more than one interpretation.'"[22] The existence of at least two plausible constructions of the settlement agreement is clear for the foregoing reasons. Accordingly, the Court holds that the agreement is ambiguous and that the parol evidence tendered by the parties is properly considered. This conclusion has one further consequence, namely that the practical construction placed upon the agreement by the parties is properly considered and may provide important evidence of their intentions.[23]

In this case, the parameters of the parties' agreement with respect to 1994 are quite clear. At the time the settlement was reached, both sides knew that the Funds had made demands for the period December 1993 through October 1994 based on the information available to them but that they had not completed their 1994 audit in consequence of the impasse over the auditor's access to information concerning non-unit employees. The parties intended that further steps be taken with respect to the 1994 audit, as even Mr. Frank conceded. While Mr. Frank said that he believed that the object of those steps was simply to fix defendant's liability for the months of November and December, the information he provided included *annual* earnings for management personnel and the entire payroll journal. It is difficult to see how doing so would have been consistent with his contention that the Funds had surrendered their right to complete the audit for the entire year 1994, particularly in view of the Funds' refusal to settle the case unless it retained their audit rights and Mr. Frank's having compromised the non-unit employee issue simply by securing for his client the Funds' agreement that the compensation of management and the bookkeeper would remain confidential. The Court therefore finds that the intention of the parties was that the Funds retain the right to complete the 1994

---

**20.** *E.g., Fitzgerald v. Alleghany Corp.,* 882 F.Supp. 1433, 1435 (S.D.N.Y.1995) (collecting cases); *Hirschfeld v. Spanakos,* 871 F.Supp. 190, 193 (S.D.N.Y.1994).

**21.** This possibility draws support from the context in which the settlement was signed. The Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.,* does not explicitly give plan trustees a right of access to employer records to audit their contribution liability. The right of access first was recognized by the Supreme Court in *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 571–74, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), where the employers were under contractual obligations to submit to audits. While *New York State Teamsters Conf.*

*Pension and Retirement Fund v. Boening Brothers, Inc.,* 92 F.3d 127 (2d Cir.1996), later extended the right of access to employers which had agreed to make contributions but which had not contracted to submit to audits, that case had not yet been decided when these parties reached the 1996 settlement. In consequence, it would have been perfectly understandable for the Funds to have insisted on paragraph 6 or some comparable language lest they otherwise release defendant prospectively from its contractual obligation to submit to audits.

**22.** *Fireman's Fund Ins. Cos.,* 948 F.Supp. at 1234 (quoting *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir.1990)).

**23.** *Id.* at 1234 n. 15 (collecting cases).

audit and to seek recovery of any amounts found owing for that entire year.

This does not resolve the issue as to the Funds' rights in respect of 1991–93. The subject was not a matter of controversy until 1996 and so did not arise in the negotiation of the settlement agreement. In my view, the reasonable interpretation of the agreement in these circumstances, considered without regard to the parties' actions after that agreement was signed, would have been that the Funds preserved their audit rights—and thus their right to seek unpaid contributions—only in respect of the controverted and subsequent periods. But the parties' actions following the execution of the agreement evidence a different intention. The Funds insisted on an audit for 1991–93, which is some evidence of their intention having been to retain that right. From June 1996, when the auditor first made that demand, until May 1997, after the Funds had threatened suit, the defendant did not contest the Funds' right to conduct that audit. It first responded that the necessary records were not available. It then stalled. Only on the eve of litigation did its counsel set up the settlement agreement as a defense to the Funds' demand.

In all the circumstances, the Court finds that the intention of the parties was as the Funds contend: the settlement agreement resolved only the Funds' claim for underpayments that were evident on the face of the monthly reports for the period December 1993 through October 1994. Their audit rights, both prospective and retrospective, were entirely preserved as were their rights to seek recovery of any unpaid contributions disclosed by such audits.

*Res Judicata*

■ The foregoing does not in itself dispose of the defendant's contention that the stipulation and order of dismissal signed by Judge Keenan independently bars the action on the theory that it was a final judgment on the merits that bars all claims that the Funds had arising out of the same causes of action asserted in the Prior Action and that could have been asserted in that suit. And if the stipulation and order of dismissal had been Judge Keenan's final word in the Prior Ac-

tion, the contention would have presented an interesting problem. But it was not.

The March 18, 1996 amended settlement agreement replaced the original settlement agreement and was "so ordered" by Judge Keenan. Moreover, Judge Keenan's March 18, 1996 order expressly incorporated the amended settlement agreement and amended the March 13, 1996 stipulation and order of dismissal. In consequence, this Court holds that the preclusive effect of the stipulation and order of dismissal, as amended by the March 18, 1996 order, is coextensive with the amended settlement agreement. Accordingly, Judge Keenan's order adds nothing to defendant's position.

*Conclusion*

For the foregoing reasons, plaintiffs are entitled to judgment declaring that defendant is obliged to:

1. Produce the business records relating to each of the employees employed by said defendant (other than management employees and the bookkeeper) for each of the years 1991, 1992, 1993 and 1994 for the purpose of an audit by plaintiffs to determine all amounts due to the plaintiffs, and

2. Pay the full amount of any past due contributions owed to plaintiffs for the period January 1991 through December 1994, with liquidated damages, interest, fees, costs, and attorney's fees, less $11,215.70.

The judgment, of course, does not determine whether any past due contributions are owed or the amount thereof.

The foregoing include the Court's findings of fact and conclusions of law.

SO ORDERED.