**UNITED INDUSTRIAL CORPO-RATION, a Delaware corpo-ration, Plaintiff,**

v.

**IFTE plc, a company organized under the laws of England and Wales, Defendant.**

**No. 01 CIV. 10757(RMB).**

United States District Court, S.D. New York.

Aug. 14, 2003.

Bruce Stephen Meyer and Lianne Pinchuk, Weil Gotshal & Manges, L.L.P. New York City, for plaintiff.

Frank T. Spano, Hogan & Hartson LLP, New York City, for defendant.

**ORDER**

BERMAN, District Judge.

## I. Background

In this action, filed on November 29, 2001, United Industrial Corp. ("Plaintiff") alleges that IFTE plc ("Defendant") breached an August 1, 2000 agreement ("SPA") to acquire all of the outstanding stock of Symtron Systems, Inc. ("Symtron"). Symtron, Plaintiff's former subsidiary, provides fire simulation systems used to train firefighters. (*See* Plaintiff's Statement Pursuant to Rule 56.1 ("Pl. 56.1 Stmt.") ¶¶ 13, 33 at 3, 9.) At the time the parties executed the SPA, Symtron had outstanding (but apparently disputed) claims under a contract with the U.S. Navy for approximately $3,500,000 (*see* Defendant's Statement Pursuant to Rule 56.1 ("Def. 56.1 Stmt.") ¶¶ 10, 16, at 3, 4), for which it had filed "Requests for Equitable Adjustment" ("REA") to settle the claims (*Id.* ¶ 10, at 3).

Section 6(d) of the SPA provides that Plaintiff and Defendant will divide any REA recovery: "Upon settlement of or

resolution of the REA, [Defendant] shall cause [Symtron] to promptly remit to [Plaintiff] out of the recovery thereof (i) the aggregate amount previously paid by [Plaintiff] to [Symtron] pursuant to Section 5(f) hereof, and (ii) an amount equal to ninety percent (90%) of the remainder of the recovery (**less any Taxes payable with respect to such recovery**), if any." (*Id.* ¶ 18, at 4–5; Pl. 56.1 Stmt. ¶ 16, at 4 (emphasis added).) The SPA also contains an indemnification provision, which requires, among other things, Plaintiff to indemnify Defendant against all claims by Plaintiff

> directly or indirectly, by reason of or resulting from any misrepresentation or breach of any representation or warranty, or non compliance with any conditions or other agreements, given or made by [Plaintiff].

(Def. 56.1 Stmt. ¶ 20, at 5; Pl. 56.1 Stmt. ¶ 19, at 4–5.)

In or around June 2001, Symtron reached an understanding with the U.S. Navy to settle (and eventually did settle) the REA for $1,500,000. (*See* Def. 56.1 Stmt. ¶ 23, at 7; Pl. 56.1 Stmt. ¶ 21, at 6.) On August 21, 2001, Plaintiff and Defendant entered into Amendment No. 1 to the SPA ("Amendment") (Def. 56.1 Stmt. ¶ 25, at 7; *see* Pl. 56.1 Stmt. ¶ 24, at 6; Defendant's Counter Rule 56.1 Statement ("Def. Counter 56.1 Stmt.") ¶ 24, at 5), to provide, among other things:

> 2. Upon receipt of the payment by Symtron under the modification, [Defendant] shall cause Symtron to forward to [Plaintiff] the sum of $1,000,000 U.S. in full satisfaction for any money [Plaintiff] may be entitled to under the SPA with respect to the REA, including without limitation under Section 6(d) of the SPA. Symtron shall be entitled to retain all moneys Symtron receives above $1,000,000 with respect to the REA . . . .

> 3. **Consistent with Section 6(d) of the SPA, [Plaintiff] shall reimburse [Defendant] for any Taxes payable by [Defendant] and/or Symtron with respect to the REA recovery.**

(Def. 56.1 Stmt. ¶ 26, at 7–8 (emphasis added).)

After receiving payment of $1,500,000 from the U.S. Navy on or about October 16, 2001, (*Id.* ¶ 30, at 8; Pl. 56.1 Stmt. ¶ 28, at 7) Defendant paid Plaintiff $400,000 plus interest. (*See* Def. 56.1 Stmt. ¶ 34, at 9; Plaintiff's Counter Rule 56.1 Statement ("Pl. Counter 56.1 Stmt.") ¶ 34, at 4; Pl. 56.1 Stmt. ¶ 32, at 8–9; Def. Counter 56.1 Stmt. ¶ 32, at 7.) Plaintiff claims here that Defendant paid too little, i.e., that Defendant should have paid Plaintiff $1,000,000 from the REA recovery. Plaintiff's theory is that the REA recovery resulted in no "Taxes payable." (*See* Complaint.) Rather, Plaintiff claims, the REA recovery resulted in a tax advantage (deduction) for Defendant. (*See id.*)

The parties present the Court with five motions: (i) Defendant moves pursuant to Fed.R.Civ.P. 56 for summary judgment on Plaintiff's breach of contract claim; (ii) Plaintiff cross moves for summary judgment on Plaintiff's breach of contract claim; (iii) Defendant moves pursuant to Fed.R.Civ.P. 15 to amend its Answer to state a counterclaim for indemnification; (iv) Defendant moves for summary judgment on its proposed counterclaim; and (v) Plaintiff cross moves for summary judgment on Defendant's proposed counterclaim.

**For the reasons set forth below, the Court: (i) denies Defendant's motion for summary judgment on Plaintiff's breach of contract claim; (ii) denies Plaintiff's cross motion for summary judgment on its breach of contract claim; (iii) grants Defendant's motion to amend its Answer; (iv) denies Defendant's motion for**

summary judgment on the proposed counterclaim; and (v) denies Plaintiff's cross motion for summary judgment on Defendant's proposed counterclaim.

## II. Standard of Review

 A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. When cross motions for summary judgment are made, the standard is the same as that for individual motions. *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir.2001). The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party. *Id.* at 121.

 Rule 15(a) of the Fed.R.Civ.P. provides that a party may amend a pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

## III. Analysis

The Court has reviewed Defendant's "Memorandum of Law in Support of IFTE's Motion for Summary Judgment and for Leave to File Counterclaim," dated March 10, 2003 ("Def.'s Br."); Plaintiff's "Memorandum of Law in Support of United Industrial Corporation's Motions," dated April 21, 2003 ("Pl.Br."); Defendant's "Reply Memorandum of Law in Further Support of Defendant's [sic] IFTE's Motion," dated May 13, 2003 ("Def.Reply"); and Plaintiff's Reply Memorandum of Law, dated May 27, 2003 ("Pl.Reply"), among other things. The Court heard oral argument on August 13, 2003.

*Cross Motions for Summary Judgment with Respect to Breach of Contract*

 Plaintiff and Defendant each argue that the Court should conclude as a matter of law that the language in the SPA and the Amendment is unambiguous and supports their respective interpretations of the phrase "Taxes payable." Under Plaintiff's theory of the case, it is owed $600,000 and under Defendant's theory of the case it owes Plaintiff nothing. Among many arguments, Defendant asserts that "[t]he phrase 'any Taxes payable with respect to such recovery' in Section 6(d) . . . means any ascertainable tax liability that resulted from Symtron's receipt of REA recovery," not necessarily a net tax obligation. "[B]ased upon a combined federal and state tax rate of 40%, Symtron has $600,000 Taxes payable with respect to its

$1.5 million REA recovery." (Def. Br. at 2.)

According to Plaintiff, Defendant had no "Taxes payable." "The key fact that [Defendant] obscures is that the recovery of $1.5 million was *on a preexisting claim of approximately $3.5 million.* For tax purposes, this preexisting claim had been written down to, and carried on Symtron's books at, approximately $2.5 million, and had a *tax basis of $2.5 million.* Thus, it is undisputed that the recovery of only $1.5 million on this claim resulted in a *$1 million tax loss* rather than a taxable gain. This loss actually created a $1 million tax *deduction* or benefit to Symtron, not 'Taxes payable.' §" (Pl. Br. at 1.) Plaintiff also argues that "it is clear from the language of both the original paragraph 6(d) and section 3 of the Amendment, that the 'purpose' of the agreements was to provide [Plaintiff] with the vast bulk of the recovery, and to provide a small portion to [Defendant] to compensate it for its efforts in pursuing the recovery." (Pl. Reply at 4.)

 " 'Where the sole question presented on a motion for summary judgment is the interpretation of a clear and unambiguous written agreement, the issue is one of law for the court and may be decided upon a motion for summary judgment.' " *GPA Inc. v. Liggett Group Inc.,* 94 Civ. 5735, 1996 WL 337288, at *3 (S.D.N.Y. June 18, 1996). On the other hand, "[c]ontract language is ambiguous if it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract alone." *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir. 1990); *see also Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.,* 111 F.Supp.2d 450, 455 (S.D.N.Y.2000) ("An ambiguity arises if 'the terms of a contract could suggest "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." ' " (citation omitted)).

Here, each party declares that the contract language is clear. Yet the parties' respective interpretations are wholly contradictory. It appears that the language in section six of the SPA and section three of the Amendment is unclear and that it could contemplate calculation of "Taxes payable" with respect to the REA recovery without reference to any tax basis, or, in contrast, a reasonable interpretation (also) is that "Taxes payable" refers to money actually paid for taxes as a result of the recovery. (*See* SPA § 6–7; Amendment § 3.) The Court concludes that the SPA and Amendment are ambiguous and "reasonably susceptible of more than one interpretation." *Burger King,* 893 F.2d at 528 ("The parties' intended meaning simply is not apparent from the face of the agreement."); *Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir. 1992) ("Where the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words becomes an issue of fact and summary judgment is inappropriate.").

*Extrinsic Evidence*

 Plaintiff argues that if the Court determines that an ambiguity exists, "[t]his is a case where 'the extrinsic evidence is so one-sided that no reasonable factfinder could find to the contrary, in which event the court should resolve the ambiguity as a matter of law.' " (Pl. Br. at 22 (citation omitted).) Defendant argues, among other things, that if the Court looks

outside of the four corners of the SPA and the Amendment, the extrinsic evidence does not establish the interpretation Plaintiff advances. Defendant also contests Plaintiff's assertion that Defendant drafted the provisions at issue. (*See, e.g.,* Def. Reply at 16–20; Def. Counter 56.1 Stmt. ¶ 27, at 6 ("The Amendment was the product of an exchange of drafts between the parties and neither [Plaintiff] nor [Defendant] can be fairly characterized as the sole draftsman.").)

A review of the evidence (presented by the parties) leaves material questions of fact unanswered. The Court holds that factual questions exist in respect of, among other things, how the parties meant to calculate the amount of "Taxes payable" and whether the REA recovery of $1.5 million was certain or only anticipated at the time of the Amendment. (*See* Def. 56.1 Stmt. ¶ 28, at 8; Pl. 56.1 Stmt. ¶ 26, at 7; Pl. Counter 56.1 Stmt. ¶ 28, at 4; Def. 56.1 Stmt. ¶ 26, at 6.); *see also Burger King,* 893 F.2d at 529 ("Because the agreement is ambiguous, examination of extrinsic evidence is proper to determine the intent of the parties. The extrinsic evidence, however, is conflicting, and raises factual issues that render the . . . grant of . . . summary judgment inappropriate."). Accordingly, the Court denies the cross motions for summary judgment and leaves the determination for trial.

*Motions to Amend to Add a Counterclaim and for Summary Judgment on the Counterclaim*

■ Defendant argues that Plaintiff "breached the contract by repudiating its obligation to reimburse [Defendant] for Symtron's Taxes payable. As a result, pursuant to Section 14 of the SPA [Plaintiff] must indemnify [Defendant] against its costs and expenses incident to [Plaintiff's] breach of contract, including [Defendant's] attorneys' fees in this matter."

(Def. Br. at 2–3.) Defendant claims that "[b]ecause there are $600,000 in Taxes payable with respect to the $1.5 million REA recovery, [Plaintiff's] demand for $1 million, not reduced by those Taxes payable, [Plaintiff's] unequivocal repudiation of its obligation to reimburse [Defendant], and [Plaintiff's] commencement of this lawsuit within weeks of its unwarranted demand, constituted an anticipatory breach of [Plaintiff's] contractual obligations." (*Id.* at 16.) Defendant also asserts that Plaintiff "will not suffer substantial prejudice if the Court grants [Defendant's] motion to amend" because the counterclaim "is merely recasting [Defendant's] prayer for costs and attorneys' fees as a counterclaim" and "[t]he counterclaim does not introduce any new substantive issue in the case." (*Id.* at 17–18.) In addition, "[Plaintiff] has been on notice of [Defendant's] claim for attorneys' fees since early in the litigation." (*Id.* at 18.) Moreover, because Defendant's "right to indemnification depends on resolution of the 'Taxes payable' issue in [Defendant's] favor, a matter which has already been the subject of extensive discovery, the parties will not be required to conduct additional discovery with respect to [Defendant's] counterclaim." (*Id.* at 18.) Defendant notes that this is its "first motion to amend—a motion it first raised with the court less than a year after filing its Answer, and before the formal end of discovery." (Def. Reply at 24.)

Plaintiff responds that Defendant's "proposed counterclaim is a new affirmative claim against [Plaintiff] . . . . It is not . . . a simple 'recasting' of [Defendant's] request for attorneys' fees." (Pl. Br. at 25.) Among other things, Plaintiff argues that Defendant fails to offer any excuse for the delay in stating its counterclaim, that the counterclaim is not based on any new facts, and that Plaintiff will have to con-

duct additional discovery "to properly defend itself." (*Id.* at 26–27.) In addition, Plaintiff argues that Defendant's counterclaim is futile. (*Id.* at 27–28.)

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Here, Plaintiff has not demonstrated prejudice or bad faith. The Court does not believe any additional discovery is warranted or appropriate.

While it may be difficult for Defendant to prevail on its purported counterclaim, the Court cannot call Defendant's counterclaim absolutely futile.[1] *See Scientech, Inc. v. Metro–North R.R.*, 01 civ. 8210, 2002 WL 1813854, at *2 (S.D.N.Y. Aug.7, 2002); *see also Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 215 F.R.D. 105, 107 (S.D.N.Y.2003) ("Due to the liberal rules governing the amendments of pleadings and the forgoing reasons, Defendant's motion to amend its Answer and Counterclaim is granted.").

## IV. Conclusion

For the reasons stated herein, the Court denies Defendant's motion for summary judgment on Plaintiff's breach of contract claim, denies Plaintiff's cross motion for summary judgment on its breach of contract claim, grants Defendant's motion to amend its Answer, denies Defendant's motion for summary judgment its counterclaim, and denies Plaintiff's cross motion for summary judgment on Defendant's counterclaim. The parties are directed to appear at a scheduling/settlement conference with the Court on September 18, 2003 at 11:00 a.m., in Courtroom 706 of the

Thurgood Marshall Courthouse, 40 Centre Street, New York, New York 10007.

---

1. The Court is not here ruling upon the ultimate merits of the parties' claims.